**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 5786967)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (CA SBN 289730 *pro hac vice* forthcoming)
bsodaify@clarksonlawfirm.com
Zachary T. Chrzan (CA SBN 329159 *pro hac vice* forthcoming)
zchrzan@clarksonlawfirm.com
Christina N. Mirzaie (CA SBN 333274 *pro hac vice* forthcoming)
cmirzaie@clarksonlawfirm.com
555 Madison Ave., 5th Fl.
New York, NY 10022
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------ X | |
| Amit Hezi and Joseph Nina, individually and on behalf all others similarly situated, | : : : |
| | **CASE NO.** |
| Plaintiffs, | : : : |
| v. | **CLASS ACTION COMPLAINT** |
| | : : |
| Celsius Holdings, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | : : : |
| ------------------------------------------------------ X | |

        Plaintiffs Amit Hezi and Joseph Nina (hereinafter "Plaintiffs"), individually and on

behalf of all others similarly situated, by their attorneys, allege the following upon

information and belief, except for those allegations pertaining to Plaintiffs, which are based

on personal knowledge:

## NATURE OF THE ACTION

        1.        Defendant manufactures and sells Celsius Live Fit drinks (the "Product"),

which are prominently labeled as containing "No Preservatives." Defendant specifically

targets health-conscious consumers who desire products that are free from preservatives. But, unbeknownst to these consumers, the Product contains the preservative citric acid. Defendant has substantially profited off this scheme of deception. Plaintiffs seek statutory damages, restitution, and injunctive relief on behalf of a New York class of consumers. Defendant's "No Preservatives" scheme is depicted below:



2.      This case follows a California case that was recently certified as a class action: *Prescod v. Celsius Holdings, Inc.*, Los Angeles Superior Court, Case No. 19STCV09321.

3.      The Product comes in a variety of flavors: Sparkling Orange, Sparkling Watermelon, Sparkling Wild Berry, Sparkling Grape Rush, Sparkling Kiwi Guava, Sparkling Fuji Apple Pear, Sparkling Strawberry Guava, Sparkling Cola, Non-Carbonated Raspberry Acai Green Tea, Non-Carbonated Peach Mango Green Tea, several of which are depicted

below. These flavors are all advertised as having "No Preservatives" even though they all

contain citric acid, a known preservative.



4.     Consumers are deceived by Defendant's labeling and advertising of the Product

as containing "No Preservatives,"[1] believing that they are purchasing a preservative-free

product.

5.     The FDA defines citric acid as a preservative.

6.     Plaintiffs' food science expert has confirmed citric acid is a preservative.

Plaintiff's foods science expert has also confirmed that the citric acid contained in the Product

has a preservative effect.

///

---

[1] In or about December 2020, Defendant changed its rear label. On the ingredient list, it
footnoted the ingredient citric acid to a statement in tiny font that reads, "Citric acid is added for
flavor; it is not used as a preservative." Thus, in the rare event a consumer purchaser decided to
read the ingredient list in tiny font on the rear label, the Product now expressly, falsely, and
deceptively describes citric acid as not functioning as a preservative notwithstanding the fact that
it is a Food and Drug Administration ("FDA") classified preservative and acidulant that
preserves the Product.

7.     The average consumer spends only 13 seconds to make an in-store purchasing decision.[2] That decision is heavily based upon the product's front labeling. Based on its front label, reasonable consumers believe that the Product is free from preservatives, and do not know that the Product actually contains citric acid, a preservative.

8.     Celsius' profits are attributable, in part, to deceptive labeling and advertising of the Product as containing "No Preservatives." In reality, the Product contains a well-documented preservative, citric acid.

9.     Consumers rely on Defendant's labeling and advertising of the Product as containing "No Preservatives" to be truthful and would not know that the Product actually contains a preservative.

10.     Reasonable consumers, such as Plaintiffs, do not have specialized knowledge necessary to identify ingredients in the Product as being inconsistent with Defendant's advertised claim of "No Preservatives."

11.     Defendant knows, and Plaintiffs' expert has confirmed, that consumers are willing to pay more for products without preservatives, and advertises the Product with the intention that consumers rely on the representation made on the front of the Product packaging that the Product has "No Preservatives."

12.     By falsely and deceptively labeling the Product as having "No Preservatives," Defendant has profited extensively from consumers' preference for food products that are healthier or made free of preservatives.

///

---

[2] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

**PARTIES**

13.     Plaintiff Amit Hezi ("Plaintiff Hezi") is, and at all times relevant hereto was, a citizen of New York. Plaintiff Hezi has purchased the Product at a CVS store in Manhattan, New York several time since the Fall of 2020. In making his purchase, Plaintiff Hezi relied upon the claims made on the front label of the Product, including the "No Preservative" claim, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Product. If Plaintiff Hezi had known that the Product actually contained a preservative, he would not have purchased the Product.

14.     Plaintiff Joseph Nina ("Plaintiff Nina") is, and at all times relevant hereto was, a citizen of New York. Plaintiff Nina has purchased the Product at a Rite Aid store in Manhattan, New York several times since the Spring of 2021. In making his purchase, Plaintiff Nina relied upon the claims made on the front label of the Product, including the "No Preservative" claim, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Product. If Plaintiff Nina had known that the Product actually contained preservatives, he would not have purchased the Product.

15.     Celsius Holdings, Inc. is a corporation headquartered in Boca Raton, Florida and maintains its principal business office at 2424 North Federal Hwy, Suite 208, Boca Raton, FL 33433. Celsius directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New York. Celsius is the one of the owners, manufacturers, and distributors of the Product, and is one of the companies that created and/or authorized the false, misleading, and deceptive packaging for the Product.

## JURISDICTION AND VENUE

16.     The Court has subject matter jurisdiction under the Class Action Fairness Act,

28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class

members; (2) Plaintiffs are citizens of the State of New York and Defendant is a citizen of the

State of Florida; and (3) the amount in controversy is in excess of $5,000,000, exclusive of

interests and costs.

17.     The Court has personal jurisdiction over Defendant because Defendant conducts

and transacts business in the State of New York, contracts to supply goods within the State of

New York, and supplies goods within the State of New York.

18.     Venue is proper in this Court because Plaintiff Hezi and many Class Members

reside in the Southern District of New York, and throughout the State of New York. A

substantial part of the events or omissions giving rise to the classes' claims occurred in this

District.

## FACTUAL ALLEGATIONS

### The Product Contains the Preservative Citric Acid

19.     Defendant advertises and displays on the front Product label that it contains "No

Preservatives," thereby misleading reasonable consumers to believe that the Product is free

from preservatives. However, the Product contains a well-known and well-documented

preservative, citric acid.

20.     The FDA defines a chemical preservative as "any chemical that, when added to

food, tends to prevent or retard deterioration thereof, but does not include common salt,

sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct

exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

21.     The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in beverages.[3]

22.     Plaintiff's food science expert has confirmed that citric acid is a preservative.

23.     Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and *citric acid* but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[4]

24.     Citric acid's ability to chelate, or form compounds containing a ligand bonded to a central metal atom at two or more points, with other chemical compounds allows citric acid to stabilize active ingredients.[5] Citric acid stabilizes the active ingredients in the Product and thus acts as a preservative. *Id.*

---

[3] *See* FDA website,
https://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211
.htm (last visited November 23, 2021).
[4]  *See* FDA label compliance website,
https://www.fdalabelcompliance.com/letters/ucm228663 (last visited November 23, 2021).
[5] National Center for Biotechnology Information. PubChem Database. Citric acid, CID=311,
https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (last visited November 23, 2021).

25.   Plaintiffs' food science expert has also confirmed that citric acid acts as a preservative in the Product, regardless of the subjective purpose or intent for why Defendant added citric acid to the Product, including as a flavoring agent.

26.   Even if citric acid can be used as a flavoring agent in the Product, it still: (1) is; and (2) acts as a preservative. This is so because citric acid acts as a preservative even in trace amounts.[6]

27.   Plaintiffs' food science expert has also confirmed that the quantity of citric acid contained in the Product is more than sufficient to have a preservative effect. Accordingly, Defendant's purported intent to use citric acid for flavoring has no bearing on the function of citric acid as a preservative.

28.   Citric acid in beverages functions as a preservative by serving as an acidulant and as an indirect antioxidant. Citric acid infiltrates and weakens or kills microorganisms through direct antimicrobial effect, lowering the Product's pH-level thereby combatting microorganisms, and through sequestration. Citric acid serves these functions regardless of whether it is being added as a flavoring agent.[7]

29.   Citric acid still acts as a preservative even if it was intended to be used for another purpose. Food and beverage manufacturers, like Defendant, seek to provide consumers with products that are palatable within a given shelf life. To help ensure this, manufacturers impose many hurdles to degradation when formulating a product. Therefore, if

---

[6] *See* Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food* CRC Press, pp. 95-136.
http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-in-Food.pdf (last visited November 23, 2021).
[7] *See* Deman, John M. "Acids as food additives serve a dual purpose, as acidulants and as preservatives." *Principles of food chemistry.* AVI Publishing Co., Inc., 1999, p. 438.

an ingredient has a preservative effect, like citric acid, it is considered a preservative because it acts as a hurdle to food degradation, regardless of whether it was added to the Product for other reasons.[8]

30.     Citric acid is not only a preservative; it also imparts artificial flavor. While citric acid is naturally found in fruits and vegetables, the citric acid found in processed foods, like the Products, is artificial or manufactured citric acid ("MCA") that has gone through extensive chemical processing.[9]

31.     MCA is created through *Aspergillus niger* fermentation. *Aspergillus niger* is a common black mold that grows on decomposing starchy fruits and vegetables. It is chemically processed by being fed sugars, such as glucose and sucrose, which then creates a citric acid solution, that is then filtered and processed for use in final form. As it grows, *Aspergillus niger* excretes large amounts of citric acid,[10] thereby making it an industry favorite among food and beverage manufacturers. In fact, *Aspergillus niger* remains the world's primary method for creating MCA.[11]

///

///

---

[8] *See* Biesta-Peters, E., et al. Comparing Nonsynergistic Gamma Models with Interaction Models To Predict Growth Of Emetic Bacillus Cereus When Using Combinations Of Ph And Individual Undissociated Acids As Growth-Limiting Factors. *Applied and Environmental Microbiology,* American Society for Microbiology, (2010), https://aem.asm.org/content/aem/76/17/5791.full.pdf (last visited November 23, 2021).

[9] Iliana E. Sweis and Bryan C. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, U.S. NATIONAL LIBRARY OF MEDICINE NATIONAL INSTITUTES OF HEALTH (August 9, 2018).

[10] Maria Papagianni, *Advances in citric acid fermentation by Aspergillus niger: Biochemical aspects, membrane transport and modeling*, BIOTECHNOLOGY ADVANCES, 25:244-263 (2007).

[11] Tushar Patel and Hiral Pandya, *Citric Acid Production Fermentation Process*, INTERNATIONAL JOURNAL OF ADVANCE RESEARCH AND INNOVATIVE IDEAS IN EDUCATION 3 (2017): 3983-3991.

32.     MCA—through the *Aspergillus niger* process—is used extensively in the food, beverage, chemical, and pharmaceutical industries due to its ease of handling, ability to ferment a variety of cheap, raw materials, and high citric acid yield.[12]

### Consumers Seek Preservative-Free Foods

33.     By representing the Product has "No Preservatives," Defendant seeks to capitalize on consumers' preference for less processed products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health . . . 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[13]

34.     One study found that when consumers were asked to choose a product that was the closest to their understanding of what "natural" is based on product labels, consumers often chose products with "No Preservatives" labels.[14]

35.     Plaintiff's marketing expert has confirmed that consumers are willing to pay more for products with no preservatives because of the perceived higher quality, health and safety benefits associated with preservative-free foods. According to Nielsen's 2015 Global

---

[12] Jianlong Wang, *Enhancement of citric acid production by Aspergillus niger using n-dodecane as an oxygen-vector*, PROCESS BIOCHEMISTRY, 35 (10), 1079-1083 (2000).
[13] *See, Free-From Food Trends - US - May 2015*, MINTEL http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited November 23, 2021).
[14] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods.[15] This, coupled with the fact that global sales of healthy food products reached $1 trillion in 2017, according to Euromonitor, means consumers are eager and willing to pay more for food advertised and labeled as having "No Preservatives" like the Product.[16]

36.     Defendant's practice of capitalizing on consumers' preferences for healthier products is false and deceptive. This deception continues today, as consumers continue to purchase the Product under the mistaken belief that it is preservative-free based on Defendant's false, deceptive, and misleading labeling and advertising of the Product as having "No Preservatives."

37.     Plaintiffs and other consumers of the Product made their purchase decisions in reliance upon Defendant's advertised claims that that Product contains "No Preservatives."

38.     Plaintiffs and the Class reasonably and detrimentally relied upon the representations by Defendant that the Product contains "No Preservatives." Plaintiffs and the Class would not have purchased the Product had they known that the Product contains preservatives.

39.     Defendant's conduct threatens New York consumers by using intentionally deceptive and misleading labels. Defendant's conduct also threatens other companies, large

---

[15]*See, We Are What We Eat: Healthy Eating Trends Around the World,* Nielson (Jan. 2015) https://www.nielsen.com/content/dam/nielsenglobal/eu/nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Report%20-%20January%202015.pdf (last visited on November 23, 2021).

[16] *See, Health and Wellness the Trillion Dollar Industry in 2017: Key Research Highlights*, Euromonitor International, https://blog.euromonitor.com/health-and-wellness-the-trillion-dollar-industry-in-2017-key-research-highlights/ (last visited November 23, 2021).

and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

40.     Plaintiffs seek injunctive relief against Defendant for false and misleading advertising in violation of New York General Business Law § § 349 and 350. Defendant made and continues to make these false and misleading statements in its labeling and advertising of the Product. Compliance with remedial statutes like those underlying this lawsuit will benefit Plaintiffs, the putative class, consumers, and the general public. Compliance is the primary litigation objective of this lawsuit.

41.     The false and misleading labeling and advertising of the Product violate New York General Business Law ("N.Y. GBL") sections 349 and 350 and the common law.

42.     There is no practical reason for false labeling and advertising of the Product, other than to mislead consumers as to the presence of preservatives in the Product while simultaneously providing Defendant with a financial windfall.

43.     Plaintiffs make the allegations herein upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## CLASS ALLEGATIONS

44.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23(a) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent a Class consisting of "All persons who purchased the Product in the United States, for personal use and not for resale, during the time period of four years prior to the filing of the complaint through the present ("the Class Period"). Excluded from the Class are

Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products."

45.      Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Product in the State of New York at any time during the Class Period ("the "New York Subclass").

46.      The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

47.      The Los Angeles Superior Court recently certified a California class of individuals who purchased the Product. *See Prescod v. Celsius Holdings, Inc.*, Los Angeles Superior Court, Case No. 19STCV09321.

48.      ***Numerosity:*** The Class is so numerous that their individual joinder herein is impracticable. On information and belief, the Class numbers in the hundreds of thousands or more throughout the United States and State of New York. The Class is sufficiently numerous because hundreds of thousands of units of the Product have been sold in the United States and New York during the Class Period.

49.      ***Commonality and Predominance:*** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.      Whether Defendant is responsible for the conduct alleged herein, which was uniformly directed at all consumers who purchased the Product;

b.      Whether Defendant's misconduct set forth herein demonstrates that Defendant has engaged in deceptive and/or unlawful business practices with respect to the advertising, marketing, and sale of its Product;

> c.       Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Product;
>
> d.       Whether Defendant's false and misleading statements concerning the Product were likely to deceive the public;
>
> e.       Whether Plaintiffs and the Class are entitled to injunctive relief;
>
> f.       Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

50.       ***Typicality:*** Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and the Class were susceptible to the same deceptive and false/misleading conduct and purchased Defendant's Products. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs and the Class each purchased the Product under the false belief that the Product was free of preservatives. Plaintiffs and the Class relied upon Defendant's packaging and would not have purchased the Product if they had known that the Products contained preservatives.

51.       ***Superiority:*** A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

///

52.     *Adequacy:* Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

53.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

54.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(Individually and on behalf of the Class)**

55.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

56.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

57.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the Class seek monetary damages and the entry of preliminary and permanent injunctive relief against

Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

58.     There is no adequate remedy at law.

59.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Product to consumers.

60.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Product as containing "No Preservatives," when in fact it contains the well-documented preservative, citric acid—is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class to purchase and pay a premium for the Product and to use the Product when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

61.     Plaintiffs and the Class have been injured inasmuch as they paid a premium for Products that—contrary to Defendant's representations—were not preservative-free. Accordingly, Plaintiffs and the Class received less than what they bargained and/or paid for.

62.     Defendant's advertising and Product packaging and labeling induced Plaintiffs and the Class Members to buy Defendant's Product and to pay a premium price for them.

63.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the Class have been damaged thereby.

64.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. Plaintiff and the Class seek actual damages of

$50 for Defendant's violation of this Section. Plaintiff and the Class seek actual damages of $1,000 for Defendant's willful violation of this Section.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (Individually and on behalf of the Class)

65.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

66.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

67.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

68.     Defendant's labeling and advertising contain untrue and materially misleading statements concerning the Products inasmuch as they misrepresent that the Product contains "No Preservatives," when in reality, it contains the preservative, citric acid.

69.     Plaintiffs and the Class have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Product which—contrary to Defendant's representations—were not preservative-free. Accordingly, Plaintiffs and the Class received less than what they bargained and/or paid for.

70.     Defendant's Product advertising, packaging, and labeling induced Plaintiffs and the Class to buy Defendant's Product.

71.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

72.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

73.     Defendant made the material misrepresentations described herein in its advertising, and on the Product's packaging and labeling.

74.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

75.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. Plaintiff and the Class seek actual damages of $500 for Defendant's violation of this Section. Plaintiff and the Class seek actual damages of $10,000 for Defendant's willful violation of this Section.

### THIRD CAUSE OF ACTION
### COMMON LAW BREACH OF EXPRESS WARRANTY
**(Individually and on behalf of the Class)**

76.     Plaintiffs repeat and reallege all the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

77.     Defendant expressly warranted on each and every Product that it contains "No Preservatives." Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods, the Product, that became part of the basis of the bargain and created

an express warranty that the Product would conform to the stated promise. Plaintiffs placed importance on Defendant's claims.

78.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

79.    Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that conform to the advertisement.

80.    Defendant's express warranty that the Product had "No Preservatives" was breached because the Product contained citric acid, a well-known preservative.

81.    Defendant therefore breached the terms of its express warranty with Plaintiffs and the Class by not providing Products that conform to the advertising claim that the Product has "No Preservatives."

82.    As a result of Defendant's breach of express warranty, Plaintiffs and the Class have been damaged in the amount to be determined at trial.

**FOURTH CASE OF ACTION**
**COMMON LAW UNJUST ENRICHMENT**
**(Individually and on behalf of the Class)**

83.    Plaintiffs repeat and reallege the allegations set forth above, and incorporates the same as if set forth herein at length.

84.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Product to Plaintiffs and members of the Class in a manner that was unfair, unconscionable, and oppressive.

85.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

86.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

87.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

88.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

89.     The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendant.

90.     Plaintiffs and members of the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A.      For an order enjoining Defendant from continuing to label and advertise the Products as challenged herein;

B.      For an order declaring the Defendant's conduct violates the statutes referenced herein;

20

C.        For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.        For actual, compensatory, statutory, punitive damages and/or treble damages in amounts to be determined by the Court and/or jury;

E.        For pre- and post-judgment interest on all amounts awarded, as allowable by law;

F.        For an order of restitution and all other forms of equitable monetary relief;

G.        For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

H.        An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

I.        Granting such other and further relief as the Court may deem just and proper.

///

///

///

///

///

///

///

///

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial on all triable issues.


Dated: November 23, 2021                     **CLARKSON LAW FIRM, P.C.**

                                        By: _/s/ Ryan J. Clarkson_____
                                         Ryan J. Clarkson, Esq.
                                         Bahar Sodaify, Esq.
                                         (*pro hac vice* forthcoming)
                                         Zachary T. Chrzan, Esq.
                                         (*pro hac vice* forthcoming)
                                         Christina N. Mirzaie, Esq.
                                         (*pro hac vice* forthcoming)

                                         *Attorneys for Plaintiffs*