# EXHIBIT A

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-JHR**
**Class Action Settlement Agreement**

# **Class Action Settlement Agreement**

This Settlement Agreement and Release ("Agreement"), effective upon the date of the signatories below, is made by and between Celsius Holdings, Inc. ("Celsius") and the Class Representatives (defined below) on behalf of the Class (defined below) (individually a "Party," and collectively the "Parties"), in the matters of *Prescod v. Celsius Holdings, Inc.*, LASC No. 19STCV09321 (Los Angeles Cty. Super. Ct.) ("*Prescod*"), and *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-9892-VM (SDNY) ("*Hezi*") (individually an "Action," and collectively the "Actions").

**WHEREAS**, on March 19, 2019, Class Representative Daniel Prescod filed *Prescod*. On November 23, 2021, Class Representatives Amit Hezi and Joseph Nina filed *Hezi*. Plaintiffs allege in the Actions that Defendant deceptively and unlawfully labeled, packaged, and marketed the Products (as defined below) as containing "No Preservatives." The Products contain citric acid, and Plaintiffs allege that, contrary to Defendant's representations, citric acid is a "preservative." Defendant contends that the Products used citric acid only to add flavor and not as a preservative.

**WHEREAS**, on August 2, 2021, the Hon. Kenneth R. Freeman, Judge of the Superior Court, certified the following class in the *Prescod* Action:

> All persons who purchased [the Products] in California for personal use and not for resale during the time period March 19, 2015, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products.

**WHEREAS**, in the *Hezi* Action, no class has yet been certified, but Plaintiffs have sought to represent a class comprising:

> All persons who purchased the Product[s] in the United States, for personal use and not for resale, during the time period of four years prior to the filing of the complaint through the present [defined term deleted]. Excluded from the class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products; or in the alternative, a subclass of individuals who purchased the Product[s] in the State of New York.

**WHEREAS**, collectively, the Actions allege claims under the consumer fraud laws of California and New York (specifically, Cal. Bus. & Prof. Code §§ 17200 and 17500, Cal. Civ. Code § 1770, and N.Y. Gen. Bus. Law §§ 349 and 350), breach of express warranty, and unjust enrichment. Plaintiffs were prepared to allege claims, too, under the similar consumer protection laws of other (and, potentially, all) of the 50 states plus the District of Columbia, and Plaintiffs advised Defendant that other potential class representatives would become involved in the case. Plaintiffs were preparing to file new lawsuits similar to the Actions in Illinois, Texas, and other large states, and had the Actions continued, would have asked courts in each of those states to certify multi-state classes with the intention of achieving effective nationwide certification in the event that no single court would have certified a nationwide class. Defendant would have opposed

these efforts to obtain class certification beyond California and anticipated seeking decertification of the California class prior to trial.

**WHEREAS**, although the Actions as presently pleaded focus on the "No Preservatives" statement on the Products' labels, Plaintiffs advised Defendant of their intention to pursue claims respecting other aspects of the labeling, packaging, and marketing of the Products. Defendant denies that the labeling, packaging, and marketing of the Products is misleading in any respect, but it is the intention of this Agreement to resolve *all* potential claims with respect to the Products' labeling, packaging, and marketing, and to provide compensation to all purchasers of the Products with respect to any statement by Defendant on the Products' labels or packages, or in its marketing of the Products, that a purchaser could contend was misleading.

**WHEREAS**, because of Defendant's insistence that any nationwide settlement of Plaintiffs' claims must be presented in federal court, the Parties will stipulate to the filing of an amended complaint in *Hezi* to facilitate the *Prescod* and *Hezi* Plaintiffs' pursuit and resolution of claims on behalf of all Settlement Class Members in a single action, before the Honorable Victor Marrero of the United States District Court for the Southern District of New York.

**WHEREAS**, since the *Prescod* Action was filed, Defendant has made changes to some of the business practices at issue in the Actions, including by adding a qualifier to the Labeling (defined below) advising consumers of the Products containing citric acid that citric acid is present in the Products as a flavoring and does not operate as a preservative. As set forth in this Agreement, moreover, Defendant will implement significant additional labeling changes as part of the consideration for the Agreement and the Releases to be provided by Settlement Class Members.

**WHEREAS**, the Parties and their counsel have analyzed and evaluated the merits of all Parties' contentions and this Settlement as it affects all Parties and the Settlement Class Members and, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Action and the prompt provision of effective relief to the Settlement Class are in the best interests of the Settlement Class Members.

**WHEREAS**, Defendant has denied, and continues to deny, all material allegations of the Actions, including that the Products were deceptively and unlawfully labeled, packaged, and marketed in any respect, or that any consumer suffered any harm or injury as a result of his or her purchase of the Products and, without admitting the truth of any allegations made in the Action, or any liability with respect thereto, has concluded that it is desirable that the claims against it, as well as the potential claims threatened with respect to the same labeling, packaging, and marketing, be settled and dismissed on the terms reflected in this Agreement in order to resolve costly and burdensome litigation and to avoid further expense, inconvenience, and interference with ongoing business operations.

**WHEREAS**, to reach this Agreement, the Parties engaged in substantial direct discussions and two separate mediations, the second of which was overseen by the Hon. Peter Lichtman (Ret.), former Judge of the Superior Court, Los Angeles County, State of California.

**WHEREAS**, Defendant hereby consents, solely for the purposes of the settlement set forth herein, to the certification of the Settlement Class and appointment of Class Counsel as counsel for the Settlement Class and the Class Representatives as representatives of the Settlement Class; provided, however, that if this Agreement fails to receive Court approval or otherwise fails to be executed, including but not limited to, the judgment not becoming final, then the Parties retain all rights that they had immediately preceding its execution of this Agreement, and the Actions will continue as if the Settlement Class had never been certified. The fact that Defendant conditionally consents herein to certification of the Settlement Class shall not be used against Defendant by any Party or non-party for any purpose in this Action or any other action, litigation, lawsuit, or proceeding of any kind whatsoever. The Parties agree, subject to approval by the Court, that the Actions between Plaintiffs, on the one hand, and Defendant, on the other hand, shall be fully and finally compromised, settled, and released on the terms and conditions set forth in this Agreement.

**WHEREAS**, this Agreement is contingent upon the issuance by the Court of both preliminary approval and final approval. Should the Court not issue preliminary approval and/or final approval, the Parties do not waive, and instead expressly reserve, all rights and remedies in the Actions.

**WHEREAS**, this Agreement reflects a compromise between the Parties and shall in no event be construed as or be deemed an admission or concession by any Party of the truth, or lack thereof, of any allegation or the validity, or lack thereof, of any purported claim or defense asserted in any of the pleadings or filings in the Actions, any threatened but not yet filed claim, or of any fault on the part of Defendant, and all such allegations are expressly denied. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability by or against any Party.

**WHEREAS**, Celsius and the Class Representatives on behalf of the Class (as defined below) wish to resolve any and all past, present, and future claims that the Class has or may have against Celsius on a nationwide basis, of any nature whatsoever, as they relate to the allegations in the Actions regarding the Class Products.

**NOW THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions.

## 1. DEFINITIONS.

As used in this Agreement, the following capitalized terms have the meanings specified below.

**1.1.** "**Actions**" means *Prescod v. Celsius Holdings, Inc.*, LASC No. 19STCV09321 (Los Angeles Cty. Super. Ct.) ("*Prescod*") and *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-9892-VM (SDNY) ("*Hezi*").

**1.2.** "**Agreement" or "Settlement Agreement"** means this Class Action Settlement Agreement.

**1.3. "Cash Award"** means a cash payment from the Settlement Fund to a Settlement Class Member with an Approved Claim.

**1.4. "Celsius"** or **"Defendant"** means Celsius Holdings, Inc., the defendant in the Actions.

**1.5. "Claim"** means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Class Administrator in accordance with the terms of this Agreement.

**1.5.1. "Approved Claim"** means a claim approved by the Class Administrator, according to the terms of this Agreement.

**1.5.2. "Claimant"** means any Class Member who submits a Claim Form for the purpose of claiming benefits, in the manner described in Section 4 of this Agreement.

**1.5.3. "Claim Form"** means the document to be submitted by Claimants seeking direct monetary benefits pursuant to this Agreement.

**1.5.4. "Claims Deadline"** means the date by which a Claimant must submit a Claim Form to be considered timely. The Claims Deadline shall be sixty (60) calendar days after the Settlement Notice Date.

**1.5.5. "Claims Process"** means the process by which Class Members may make claims for relief, as described in Section 4 of this Agreement.

**1.6. "Class"** or **"Settlement Class"** means all persons in the United States who, between January 1, 2015 and the date of entry of preliminary approval of this Agreement (the "Class Period"), purchased in the United States, for personal or household consumption and not for resale or distribution, one of the Class Products, as defined below. Excluded from the Settlement Class are: (1) the presiding judges in the Actions; (2) any member of those judges' immediate families; (3) Defendant; (4) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (5) counsel for the Parties; and (6) any persons who timely opt-out of the Settlement Class.

**1.7. "Class Member"** or **"Settlement Class Member"** means any person who is a member of the Class.

**1.8. "Class Period"** means January 1, 2015 to the date of entry of preliminary approval of this Agreement.

**1.9. "Class Products"** or **"Products"** means any Celsius beverage, including the original Celsius beverages (at times labeled "Celsius Live Fit"), Celsius Heat, Celsius BCAA+Energy, and Celsius with Stevia), as well as Celsius On-The-Go and Flo Fusion powdered drinks.

**1.10. "Class Administrator"** means the independent company approved by the Court to provide the Class Notice and conduct the Claims Administration.

**1.11. "Claims Administration"** means the administration of the Claims Process by the Class Administrator.

**1.12. "Class Counsel"** means the following attorneys of record for the Class Representatives and Class in the Action, unless otherwise modified by the Court:

Ryan J. Clarkson
Bahar Sodaify
Zachary Chrzan
Clarkson Law Firm, PC
22525 Pacific Coast Highway
Malibu, CA 90265
Phone: (213) 802-2132

**1.13. "Class Notice"** means both those documents notifying Class Members, pursuant to the Notice Plan, of the Settlement, and the substance of those documents.

**1.13.1. "Long Form Notice"** refers to the proposed full Class Notice that is attached to this Agreement as Exhibit 1, which the Parties acknowledge may be modified by the Court without affecting the enforceability of this Agreement.

**1.13.2. "Short Form Notice"** means the summary Class Notice that is attached to this Agreement as Exhibit 2, which the Parties acknowledge may be modified by the Court without affecting the enforceability of this Agreement.

**1.13.3. "Notice Plan"** means the plan for dissemination of Class Notice to be submitted to the Court in connection with a motion for preliminary approval of this Settlement, attached to this Agreement as Exhibit 3

**1.13.4. "Settlement Notice Date"** means twenty-one (21) calendar days after the date the Court issues the Preliminary Approval Order.

**1.14. "Class Representative(s)"** means named plaintiffs Daniel Prescod, Amit Hezi, and Joseph Nina.

**1.15. "Court"** means the United States District Court for the Southern District of New York.

**1.16. "Effective Date"** means the date on which the Judgment becomes final. For purposes of this definition, the Judgment shall become final: (a) if no appeal from the Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, the date on which the latest deadline for seeking discretionary review from any and all higher courts

has passed without such a petition being filed or, if such a petition for discretionary review is filed, the date on which the petition is fully disposed of, either through denial or issuance of a mandate following its granting.

**1.17. "Fees and Costs Award"** means the amount of attorneys' fees and reimbursement of expenses and costs awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

**1.18. "Final Approval Hearing"** means the hearing to be conducted by the Court to determine whether to grant final approval of the Settlement and to enter Judgment.

**1.19. "Final Approval Order"** means the order to be submitted to the Court in connection with a motion for final approval and the Final Approval Hearing, substantially in the form attached hereto as Exhibit 4.

**1.20. "Judgment"** means the Court's act of entering a final judgment on the docket.

**1.21. "Labeling"** or **"Label"** means all written, printed, or graphic matter appearing upon the packaging of any of the Products, as well as all written, printed, or graphic matter used in the distribution or sale of any Product, including, without limitation, all information, representations, instructions, and pictorial content published or appearing in advertising, promotions, commercials, displays, print media, websites, social media, television, and all other media platforms and outlets, describing, explaining, and/or promoting any Product.

**1.21.1. "Label Changes Deadlines"** means the date by which Celsius will remove the statements as specified in Section 5 from the Class Products internally and is set as six (6) months after the date that the Final Approval Order is issued.

**1.21.2. "Label Changes End Date"** means the date through which Celsius will not produce the Class Products with labels that contain the statements specified in Section 5.

**1.22.** "**Notice and Other Administrative Costs**" means all costs and expenses actually incurred by the Class Administrator in administering the Settlement, including the publication of Class Notice, establishment of the Settlement Website, the processing, handling, reviewing, and paying of claims made by Claimants, and paying taxes and tax expenses related to the Settlement Fund (including all federal, state, or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants). All taxes on the income of the Settlement Fund, and any costs or expenses incurred in connection with the taxation of the Settlement Fund shall be paid out of the Settlement Fund, shall be considered to be a Notice and Other Administrative Cost, and shall be timely paid by the Class Administrator without prior order of the Court. The Parties shall have no liability or responsibility for the payment of any such taxes.

**1.23. "Objection Deadline"** means the date by which Class Members must file with the Court a written statement objecting to any terms of the Settlement or to Class Counsel's request

for fees or expenses. The Parties will request that the Court set the Objection Deadline to be sixty (60) calendar days after the Settlement Notice Date.

**1.24. "Opt-Out Deadline"** means the deadline by which a Class Member must exercise his or her option to opt out of the Settlement so as not to release his or her claims as part of the Released Claims. The parties will request that the Court set the Opt-Out Deadline to coincide with the Objection Deadline.

**1.25. "Party"** or **"Parties"** means the Class Representatives, on behalf of the Class, and Celsius.

**1.26. "Person"** means any individual, corporation, partnership, association, or any other legal entity.

**1.27. "Plaintiffs"** means the Class Representatives, either individually or on behalf of the Class.

**1.28. "Preliminary Approval Date"** means the date of entry of the Court's order granting preliminary approval of the Settlement.

**1.29. "Preliminary Approval Order"** means the proposed order to be submitted to the Court in connection with the motion for preliminary approval, substantially in the form attached hereto as Exhibit 5.

**1.30. "Programmatic Relief"** means the relief as set forth in detail in paragraph 5.1 below.

**1.31. "Proof of Purchase"** means a receipt or purchase record from a Released Party, a removed UPC code, or other documentation from a third-party commercial source reasonably establishing the fact and date of purchase of the applicable Product during the Class Period in the United States.

**1.32. "Released Claims"** means the claims released by the Class Members via this Agreement.

**1.33. "Released Parties"** means all manufacturers, distributors, retailers, sellers, and resellers of any of the Products, together with each of their direct and indirect parent companies, predecessor entities, successor entities, related companies, direct and indirect subsidiaries, divisions, holding entities, past and present affiliates and banners, franchisees, distributors, wholesalers, retailers, advertising and production agencies, licensors, and agents, including all current and former officers, directors, managers, members, partners, owners, employees, shareholders, consultants, attorneys, legal representatives, insurers, agents, assigns, and other equity interest holders of any of the foregoing, and their heirs, executors, administrators, and assigns.

**1.34.** "Releasing Parties" means Plaintiffs, all Settlement Class Members, and any Person claiming by or through them, including any Person claiming to be their spouse, parent, child, heir, guardian, associate, co-owner, agent, insurer, administrator, devisee, predecessor, successor, assignee, equity interest holders or representatives of any kind (other than Class Counsel), shareholder, partner, member, director, employee or affiliate, and their heirs, executors, administrators, and assigns.

**1.35.** **"Request for Exclusion"** means the written submission submitted by a Settlement Class Member to be excluded from the Settlement consistent with the terms of this Agreement, which request shall include the requestor's name, address, the name of the Action, and lawful signature.

**1.36.** "**Service Award**" means any award approved by the Court that is payable to the Class Representatives from the Settlement Fund.

**1.37.** **"Settlement"** means the resolution of this Action embodied in the terms of this Agreement.

**1.38.** **"Settlement Fund"** means the qualified settlement fund this Agreement obligates Celsius to fund in the amount of $7,800,000, which is in the form of a non-reversionary common fund and is established in accordance with 26 C.F.R. §§ 1.468B-1(c) and (e)(1).

**1.39.** **"Settlement Payment"** means the amount to be paid to valid Claimants as detailed in Section 4.

**1.40.** **"Settlement Website"** means a website maintained by the Class Administrator to provide the Class with information relating to the Settlement.

## 2. <u>SETTLEMENT FUND</u>.

**2.1** **Settlement Consideration**. Celsius agrees to establish a non-reversionary common fund of $7,800,000 (the "Settlement Fund"), which shall be used to pay all Settlement expenses, including Notice and Other Administrative Costs; Fees and Costs Award; Service Awards; and Class Members' Claims. The Settlement Fund will not include any costs related to the Programmatic Relief. Except for costs related to the Programmatic Relief, Celsius shall not be liable to pay more than the amount of the Settlement Fund or to pay anything apart from the Settlement Fund.

**2.2** **Creation and Administration of Qualified Settlement Fund.** The Class Administrator is authorized to establish the Settlement Fund under 26 C.F.R. §§ 1.468B-1(c) and (e)(1), to act as the "administrator" of the Settlement Fund pursuant to 26 C.F.R. § 1.468B-2(k)(3), and to undertake all duties as administrator in accordance with the Treasury Regulations promulgated under § 1.468B of the Internal Revenue Code of 1986. All costs incurred by the Class Administrator operating as administrator of the Settlement Fund shall be construed as costs of

Claims Administration and shall be borne solely by the Settlement Fund. Interest on the Settlement Fund shall inure to the benefit of the Class.

**2.3 Schedule of Payments into Settlement Fund.** Celsius will make payments into the Settlement Fund in accordance with the following schedule:

**2.3.1** *Notice and Other Administrative Costs*. Amounts for the Notice and Other Administrative Costs, to be paid at a time agreed upon between Celsius and the Class Administrator.

**2.3.2** *Fees and Costs Award.* An amount equal to the Fees and Costs Award described at Paragraph 3.2, to be paid within fourteen (14) calendar days after the entry of Judgment.

**2.3.3** *Payment of Service Awards and Valid Cash Claims*. An amount equal to $7,800,000 less the sum of all prior payments made into the Settlement Fund, to be paid seven (7) calendar days after the Effective Date.

**3. ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS.**

**3.1. Application for Attorneys' Fees and Costs and Service Awards**. At least thirty (30) calendar days before the Objection Deadline, Class Counsel and Class Representatives shall file a motion, set for hearing on the same date as the Final Approval Hearing, requesting a Fees and Costs Award and Service Awards, to be paid from the Settlement Fund. Class Counsel shall apply for attorneys' fees no greater than one-third of the Settlement Fund. Class Counsel shall also apply for reimbursement of reasonable litigation costs and expenses not to exceed Three Hundred Thousand Dollars ($300,000). Class Counsel shall apply for a Fees and Costs Award not to exceed Two Million Nine Hundred Thousand Dollars ($2,900,000). Class Counsel shall also apply for Service Awards to the Class Representatives not to exceed Twenty Thousand Dollars ($20,000) total.

**3.2. Distribution of Attorneys' Fees and Costs**. The Class Administrator shall pay to Class Counsel from the Settlement Fund the amount of attorneys' fees and costs awarded by the Court within twenty-one (21) calendar days of entry of Judgment, notwithstanding the filing of any appeals, or any other proceedings which may delay the Effective Date of the Settlement or a final Judgment in the case, subject to Class Counsel providing full payment details for Clarkson Law Firm IOLTA account ending in -5363 via routing number and tax ID number for Clarkson Law Firm, PC. Payment of the Fees and Costs Award will be made from the Settlement Fund by wire transfer to Clarkson Law Firm IOLTA ending in -5363 for distribution in accordance with the wire instructions to be provided by Clarkson Law Firm, PC, and completion of necessary forms, including but not limited to Form W-9. Notwithstanding the foregoing, if for any reason, the Fees and Costs Award is overturned, reduced, vacated, or otherwise modified, Class Counsel shall be obligated to return any difference between the amount of the original award and any reduced award. If the Settlement remains in force, the difference shall be returned to the Settlement Fund; if the Settlement is not in force, the difference shall be returned to Celsius.

**3.3. Distribution of Service Awards**. Any Service Award approved by the Court for the Class Representatives shall be paid from the Settlement Fund in the form of a check to the Class Representatives that is sent care of Class Counsel within the earlier of thirty (30) calendar days after the Effective Date, or the date the Class Administrator begins making distributions to Claimants.

**3.4. Settlement Independent of Award of Fees, Costs, and Service Awards**. The awards of attorneys' fees and costs, and payment to the Class Representatives are subject to and dependent upon the Court's approval. However, this Settlement is not dependent or conditioned upon the Court's approving Class Counsel's and Class Representatives' requests for such payments or awarding the particular amounts sought by Class Counsel and Class Representatives. In the event the Court declines Class Counsel's or Class Representatives' requests or awards less than the amounts sought, this Settlement will continue to be effective and enforceable by the Parties, provided, however, that the Class Representatives and Class Counsel retain the right to appeal the amount of the Fees and Costs Award, even if the Settlement is otherwise approved by the Court.

**4. <u>CLAIMS PROCESS</u>.**

**4.1. General Process.** To obtain monetary relief as part of the Settlement, a Class Member must fill out and submit a Claim Form, completed online or in hard copy mailed to the Class Administrator. The claim made via the Claim Form will proceed through the following general steps as described in Exhibit 6:

**4.1.1.** The Claimant will be asked to provide identifying information. The Claimant will have the opportunity to upload or otherwise provide receipts evidencing his or her purchases.

**4.1.2.** The Claimant will be asked to identify how many cans of Class Products he or she has purchased for personal or household consumption since January 1, 2015 and to certify that such products were purchased for personal or household consumption and not for distribution or resale. With respect to Celsius beverages, the Claimant will receive One Dollar ($1.00) for every can of Product purchased. For avoidance of doubt, if a Settlement Class Member purchased a four-pack of Products, that Settlement Class Member may submit a claim for having purchased four cans of Products. With respect to Celsius On-The-Go and Flo Fusion powdered drinks, which typically are sold in packages of 14, the Claimant will receive $5.00 per package of 14.

**4.1.3.** Approved Claims submitted with receipts will be capped at a Cash Award of Two Hundred Fifty Dollars ($250) per Claimant.

**4.1.4.** Approved Claims submitted without receipts will be capped at a Cash Award of Twenty Dollars ($20) per Claimant.

**4.2. The Claim Form and Timing.** The Claim Form will be available on the Settlement Website, and may be submitted to the Class Administrator online. A maximum of one Claim Form may be submitted for each Claimant and subsequent Claim Forms received from persons residing

at the same address without receipts will be rejected. Claim Forms must be submitted or postmarked on or before the Claims Deadline to be considered timely. The Claims Deadline shall be clearly and prominently stated in the Preliminary Approval Order, the Class Notice, on the Settlement Website, and on the Claim Form.

**4.3. Substance of the Claim Form.** In addition to information about the number of Class Products as set forth in Paragraph 4.1 above, the Claim Form will request customary identifying information (including the Claimant's name, address, email address, and telephone number), and may seek limited additional information from Claimants to provide reasonable bases for the Class Administrator to monitor for and detect fraud. Such additional information may include, for example, retailers and locations (city and state) at which the Class Products were purchased. The Claim Form also will require the Claimant to declare that the Class Products were not purchased for resale or distribution. In addition, the Claim Form will require the Claimant to declare that the information provided is true and correct to the best of the Claimant's memory and understanding.

**4.4. Claim Validation.** The Class Administrator shall be responsible for reviewing all claims to determine their validity. The Class Administrator shall reject any Claim that does not comply in any material respect with the instructions on the Claim Form or with the terms of this Section 4, that is submitted after the Claims Deadline, or that the Class Administrator identifies as fraudulent. The Class Administrator shall retain sole discretion in accepting or rejecting claims.

**4.5. *Pro Rata* Adjustment of Cash Awards.** If the total value of all approved Claims either exceeds or falls short of the funds available for distribution to Class Members, then the amounts of the cash payments will be reduced or increased pro rata, as necessary, to use all of the funds available for distribution to Class Members. Any such pro rata adjustment will be calculated prior to distribution of funds (*i.e.*, will be made in a single distribution). Any pro rata upward adjustment shall be capped at two times the claimed amount. For avoidance of doubt, this means that under no circumstances shall a person who submits a claim with receipts for $250 or more in purchases receive more than $500, or a person who submits a claim without receipts for $20 or more in purchases receive more than $40.

**4.6. Timing of Distribution.** The Class Administrator shall pay out approved Claims in accordance with the terms of this Agreement commencing within thirty (30) calendar days after the Effective Date, or as otherwise ordered by the Court. The Parties shall work with the Class Administrator to choose a manner of payment that is secure, cost-effective, and convenient for Claimants.

**4.7. Uncleared Payments: Cy Pres.** Those Class Members whose payments are not cleared within one hundred and eighty (180) calendar days after issuance will be ineligible to receive a cash settlement benefit and the Class Administrator will have no further obligation to make any payment from the Settlement Fund pursuant to this Settlement Agreement or otherwise to such Class Member. Any funds that remain unclaimed or remain unused after the initial distribution, including interest thereon, will be donated *cy pres* in equal shares to the Los Angeles Mission, Eat Learn Play Foundation, National First Responder Fund, and Wounded Warrior

Project. If the organization(s) is/are not acceptable to the Court, the parties shall meet and confer in good faith, and consult with the Court, to identify one or more suitable alternatives.

**4.8. Taxes on Distribution**. Any person that receives a Cash Award will be solely responsible for any taxes or tax-related expenses owed or incurred by that person by reason of that Award. Such taxes and tax-related expenses will not be paid from the Settlement Fund. In no event will Celsius, the Class Representatives, Class Counsel, the Class Administrator, or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the issuance of Cash Awards or other payments made from the Settlement Fund to Class Representatives, Settlement Class Members, or any other person or entity.

**4.9. No Unclaimed Property Rights**. This Agreement does not create any vested property interest or unclaimed property rights for Settlement Class Members who do not file valid Claims.

## 5. PROGRAMMATIC RELIEF.

**5.1. Programmatic Relief.** No later than the Label Changes Deadline of six (6) months after the Effective Date, Celsius shall adopt new Labeling for the Products substantially similar to the sample labeling attached hereto as Exhibit 7. From that point forward, Defendant shall not produce Products with the prior Labeling challenged in the Actions. Among other things, the new Labeling reflected in Exhibit 7 does not contain a representation that the Product contains no preservatives, changes other marketing statements respecting the Product, and adopts a "nutrition facts panel" as opposed to the current Products' use of a "dietary supplement" label. Defendant agrees to use the new Labeling for a period of at least three years from the adoption of the new Labeling ("Restricted Period"), except that in the event of a change of majority ownership of Defendant, this requirement will not be binding on a successor owner. During that period of no less than three years, commencing on the date that Celsius first ships products with the new Labeling, Defendant may adopt changes to the Labeling of the Products, but such changes (i) shall not include a representation that the Products contain "no preservatives" unless the formulation of the subject Product changes in a manner warranting such a representation; and (ii) shall not restore any other claim respecting the Products removed from the current labeling unless the formulation of the subject Product changes in a manner warranting such a claim. During the time period intervening the Label Changes Deadline and the Label Changes End Date, in addition to maintaining the revised Labeling, Defendant shall not advertise the Products inconsistently with (or containing representations removed from) the revised Labeling.

**5.1.1. Exhaustion of Inventory**. For the avoidance of doubt, the Released Parties, including Defendant, (i) shall be permitted to continue packaging newly produced units of the Products using the current version of the Products' Labeling, to the extent such labels remain in Defendants' inventory; (ii) shall be permitted to sell existing Product inventory and Products manufactured prior to the commencement of the Restricted Period in the ordinary course of business; (iii) shall not be required to withdraw, destroy, or recall any Products in connection with the Programmatic Relief described herein; and (iv) shall not be obligated to modify or replace existing promotional materials already in the hands of third parties.

**5.1.2.** If, after Defendant has effectuated the label change to remove the challenged statements, Class Representatives believe the Labeling of any Product does not comply with this section, Class Representatives shall provide written notice to Defendant of the specific facts and circumstances of any alleged noncompliance and discuss in good faith with Defendant appropriate changes, if any, to the then-existing Labeling; to the extent agreed, Defendant will then have one hundred twenty (120) calendar days from the date of such agreement to bring its practices into compliance with this Section 5.1 and will not be deemed to be in breach of this Agreement if it does so within such 120-day period. If no agreement is reached, Class Counsel may apply to the Court to enforce the Agreement and may seek an award of fees in the event of a successful enforcement effort.

## 6. CLASS NOTICE AND CLAIMS ADMINISTRATION.

**6.1. Class Administrator.** The Class Administrator shall assist with various administrative tasks including, without limitation:

**6.1.1.** Establishing and operating the Settlement Fund;

**6.1.2.** Arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

**6.1.3.** Assisting in the distribution to the United States Department of Justice and to State Attorneys General, within ten days after the Parties present this Agreement to the Court for Preliminary Approval, of the notices of settlement required by the Class Action Fairness Act.

**6.1.4.** Making any other mailings required under the terms of this Agreement or any Court order or law, including handling returned mail;

**6.1.5.** Answering inquiries from Class Members and/or forwarding such inquiries to Class Counsel;

**6.1.6.** Receiving and maintaining Requests for Exclusion;

**6.1.7.** Establishing a Settlement Website;

**6.1.8.** Establishing a toll-free informational telephone number for Class Members;

**6.1.9.** Receiving and processing (including monitoring for fraud and validating or rejecting) Class Member Claims and distributing payments to Class Members;

**6.1.10.** Providing regular updates on the Claims status to counsel for all Parties;

**6.1.11.** Preparing a declaration attesting to compliance with the Notice Plan; and

**6.1.12.** Otherwise assisting with the implementation and administration of the Settlement.

**6.2. Notice.** Notice of the Settlement to the Class will be effectuated through advertisement in suitable media as determined by the Class Administrator and through targeted internet and social media-based advertisements. The Class Notice will conform to all applicable requirements of the California Constitution, the United States Constitution (including the Due Process Clauses), and any other applicable law, and will otherwise be in the manner and form approved by the Parties and Court.

**6.3. Timing of Class Notice**. Class Notice will commence no later than twenty-one (21) calendar days following entry of the Preliminary Approval Order ("Settlement Notice Date").

**6.4. Opt-Out Procedures.** Class Members who wish to opt out of and be excluded from the Settlement must submit a Request for Exclusion to the Class Administrator, postmarked no later than the Opt-Out Deadline. The Request for Exclusion must be personally completed and submitted by the Class Member or his or her attorney, and so-called "mass" or "class" opt-outs shall not be permitted or recognized. The Class Administrator shall periodically notify Class Counsel and Celsius's counsel of any Requests for Exclusion. All Class Members who submit a timely, valid Request from Exclusion will be excluded from the Class and will not be bound by the terms of this Agreement, and all Class Members who do not submit a timely, valid Request for Exclusion will be bound by this Agreement and the Judgment, including the release in Paragraph 8.1 below.

**6.5. Procedures for Objecting to the Settlement.** Class Members have the right to appear and show cause why the Settlement should not be granted final approval, subject to each of the provisions of this paragraph:

**6.5.1. Timely Written Objection Required.** Any objection to the Settlement must be in writing, postmarked on or before the Objection Deadline, and sent to the Claims Administrator at the addresses set forth in the Class Notice.

**6.5.2. Form of Written Objection.** Any objection regarding or related to the Settlement must contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney if represented, (iii) information sufficient to establish the person's standing as a Settlement Class Member, (iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection, (v) identification of the case name, case number, and court for any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a propose class action settlement, the general nature of such prior objection(s), and the outcome of said prior objection(s), (vi) the objector's signature, and (vii) the signature of the objector's counsel, if any (the "Objection"). The Court may, but is not required to, hear Objections in substantial compliance with these requirements, so Settlement Class Members should satisfy all requirements.

**6.5.3. Authorization of Objections Filed by Attorneys Representing Objectors.** Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must sign either the Objection itself,

or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

**6.5.4. Effect of Both Opting Out and Objecting.** If a Class Member submits both an Opt-Out Form and Objection, the Class Member will be deemed to have opted out of the Settlement, and thus to be ineligible to object. However, any objecting Class Member who has not timely submitted a completed Opt-Out Form will be bound by the terms of the Agreement upon the Court's final approval of the Settlement.

**6.5.5. Appearance at Final Approval Hearing.** Objecting Class Members may appear at the Final Approval Hearing and be heard. If an objecting Class Member chooses to appear at the Final Approval Hearing, a notice of intention to appear must be filed with the Court or postmarked no later than the Objection Deadline.

**6.5.6. Right to Discovery**. Upon Court order, the Parties will have the right to obtain document discovery from and take depositions of any Objecting Class Member on topics relevant to the Objection.

**6.5.7. Response to Objections.** The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection, with a written response due the same day as the motion for final approval, or as otherwise ordered by the Court.

**6.5.8. Effect of Non-Objection.** A Settlement Class Member who does not file and serve a timely written objection may not appeal from the entry of any order approving the Settlement.

**7. <u>COURT APPROVAL</u>.**

**7.1. Preliminary Approval.** By December 1, 2022, unless otherwise agreed in writing, Plaintiffs will submit to the Court this Agreement, and will request via unopposed motion that the Court enter the Preliminary Approval Order in substantially similar form as the proposed order attached as Exhibit 5. In the motion for preliminary approval, Plaintiffs will request that the Court grant preliminary approval of the proposed Settlement, provisionally certify the Class for settlement purposes and appoint Class Counsel, approve the forms of Notice and find that the Notice Plan satisfies Due Process, and schedule a Final Approval Hearing to determine whether the Settlement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for service awards should be granted.

**7.2. Final Approval.** A Final Approval Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than one hundred twenty (120) calendar days after the Preliminary Approval Date. If the Court issues the Preliminary Approval Order and all other conditions precedent of the Settlement have been satisfied, no later than twenty-five (25) calendar days before the Final Approval Hearing and fourteen (14) calendar days after the Objection Deadline all Parties will request, individually or collectively, that the Court enter the Final Approval Order in substantially similar form as the proposed order attached as Exhibit 4, with Class Counsel filing a memorandum of points and

authorities in support of the motion. Celsius may, but is not required to, file a memorandum in support of the motion.

**7.3. Failure to Obtain Approval.** If this Agreement is not given preliminary or final approval by the Court, or if an appellate court reverses final approval of the Agreement, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval, provided, however, that no party may use subsequent legal developments or other intervening events, other than the decision(s) denying or reversing approval of the Agreement, as justification for renegotiating the settlement. Failing this, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force or effect; the Parties' right and defenses will be restored, without prejudice, to their respective positions as if this Agreement had never been executed; and any orders entered by the Court in connection with this Agreement will be vacated. For the avoidance of doubt, in such event, the first amended complaint shall be deemed withdrawn, and the original complaint shall be deemed the operative complaint when litigation resumes.

## 8. RELEASE.

**8.1. Effect.** By executing this Agreement, the Parties acknowledge that, upon both the entry of the Final Approval Order by the Court, and the passing of the Effective Date, and the Settlement amount being fully funded, the Actions shall be dismissed with prejudice, and all Released Claims shall thereby be conclusively settled, compromised, satisfied, and released as to the Released Parties. The Final Approval Order shall provide for and effect the full and final release, by the Releasing Parties, of all Released Claims, consistent with the terms of this Agreement. The relief provided for in this Agreement shall be the sole and exclusive remedy for any and all claims of Settlement Class Members against the Released Parties related to the Released Claims.

**8.2. Scope of Release**. The Releasing Parties hereby fully release and forever discharge the Released Parties from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, asserted or unasserted, claims, demands, liabilities, rights, debts, obligations, liens, contracts, agreements, judgments, actions, suits, causes of action, contracts or agreements, extra-contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, penalties, fees, attorneys' fees, and/or obligations of any nature whatsoever (including "Unknown Claims" as defined below), whether at law or in equity, accrued or unaccrued, whether previously existing, existing now or arising in the future, whether direct, individual, representative, or class, of every nature, kind and description whatsoever, based on any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, relating in any way to any conduct prior to the date of the Preliminary Approval Order and that: (a) is or are based on any act, omission, inadequacy, misstatement, representation (express or implied), harm, matter, cause, or event related to any Product; (b) involves legal claims related to the Products that have been asserted in the Actions or could have been asserted in the Actions; or (c) involves the advertising, marketing, promotion, purchase, sale, distribution, design, testing, manufacture, application, use, performance, warranting, packaging or Labeling of the Products (collectively, the "Released Claims"). The Parties acknowledge and agree

that bodily injury, wrongful death, and/or emotional distress claims arising from bodily injury, are not part of any of the facts alleged by Class Representatives and that such claims are not included within the Released Claims.

**8.3. Waiver.** Without limiting the foregoing, the Released Claims specifically extend to and include claims related to the Products that the Releasing Parties do not know or suspect to exist in their favor at the time that the Settlement, and the releases contained herein, becomes effective, including, without limitation, any Released Claim that if known, might have affected the Plaintiffs' settlement with and release of the Releasees, or might have affected a decision not to object to or Opt-Out of this Settlement (the "Unknown Claims"). This paragraph constitutes a waiver of, without limitation as to any other applicable law, section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**8.4. Later Discovered Facts.** The Releasing Parties understand and acknowledge the significance of these waivers of section 1542 of the California Civil Code and any other applicable federal or state statute, case law, rule, or regulation relating to limitations on releases. In connection with such waivers and relinquishment, the Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts that they now know or believe to be true with respect to the subject matter of the Action and the Settlement, but that it is their intention to release fully, finally and forever all Released Claims with respect to the Released Parties, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts at any time.

**8.5. Claim Preclusion.** Each of the Releasing Parties shall forever refrain, whether directly or indirectly, from instituting, filing, maintaining, prosecuting, assisting with or continuing any suit, action, claim, or proceeding against any of the Released Parties in connection with any of the Released Claims (a "Precluded Action"). If any of the Releasing Parties does institute, file, maintain, prosecute, or continue any such Precluded Action, Plaintiffs and Class Counsel shall cooperate with the efforts of any of the Released Parties to obtain dismissal with prejudice. The releases provided for herein shall be a complete defense to, and will preclude, any Released Claim in any suit, action, claim, or proceeding. The Final Approval Order shall further provide for and effect the release of all known or unknown claims (including Unknown Claims) actions, causes of action, claims, administrative claims, demands, debts, damages, costs, attorney's fees, obligations, judgments, expenses, compensation, or liabilities, in law or in equity, contingent or absolute, that the Released Parties now have against Plaintiffs, Class Representatives, or Class Counsel, by reason of any act, omission, harm, matter, cause, or event whatsoever arising out of the initiation, prosecution, or settlement of the Action, except with respect to any breach of the terms of this Agreement by any of Plaintiffs, Class Representatives, or Class Counsel.

**8.6. Court Retains Jurisdiction.** The Court shall retain jurisdiction over the Parties and this Agreement with respect to the future performance of the terms of this Agreement, and to assure that all payments and other actions required of any of the Parties by the Settlement are properly made or taken.

**8.7. Covenant Not to Sue**. Plaintiffs agree and covenant, and each Class Member who has not opted out will be deemed to have agreed and covenanted, not to sue any of Released Parties, with respect to any of the Released Claims, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

**8.8. Release of Class Representatives and Class Counsel.** Upon the Effective Date, Celsius will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, discharged, and covenanted not to sue Class Representatives and Class Counsel from any and all claims, demands, rights, suits, liabilities, and causes of action, whether past, present, or future, known or unknown, asserted or unasserted, that arise out of or relate to the filing and conduct of the Action.

## 9. TERMINATION.

**9.1. Celsius's Option to Terminate**. If more than 1,000 Class Members opt out, Celsius has the right in its sole discretion, but not the obligation, to terminate the Settlement Agreement and revert to the status quo ante, provided, however, that (i) the time for Celsius to exercise this right shall expire fifteen (15) calendar days after the Opt-Out Deadline, and (ii) Celsius may only exercise the option after meeting and conferring in good faith with Class Counsel.

## 10. NO ADMISSION OF LIABILITY.

**10.1. No Admission of Liability.** Celsius, while continuing to deny all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the action on the terms stated in this Agreement to avoid further expense, inconvenience, and burden, and therefore has determined that this Settlement Agreement on the terms set forth herein is in Celsius's best interests. Celsius denies any liability or wrongdoing of any kind associated with the claims alleged in this Action, and denies the material allegations of all the complaints filed in this Action. Neither the Settlement Agreement nor any actions taken to carry out the Settlement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or of the validity of any claim, defense, or of any point of fact or law on the part of any party, including but not limited to an admission that this Action is properly brought on a class or representative basis, or that a class or classes may be certified, other than for settlement purposes. Neither the Settlement Agreement, nor the fact of settlement, nor the settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission, concession, presumption, inference, or evidence thereof of any wrongdoing by Celsius or of the appropriateness of these or similar claims for class certification in any proceeding.

## 11. CELSIUS'S POSITION ON CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS.

**11.1. Celsius's Position on the Conditional Certification of Settlement Class**. Celsius disputes that class certification in this Action was proper and maintains that the decision to certify a class in *Prescod* would be reversed either by the *Prescod* court prior to or after trial, or on appeal. Solely for purposes of avoiding the expense and inconvenience of further litigation, Celsius does not oppose the certification of the Class for the purposes of this Settlement only. Preliminary certification of the Class will not be deemed a concession that certification of a litigation class or subclass is appropriate, nor will Celsius be precluded from challenging class certification in further proceedings in this Action or in any other action if the Settlement Agreement is not finalized or finally approved. If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, and said failure to obtain final approval is conclusive after any and all appeals, Celsius' stipulation to certification only for purposes of effectuating this Settlement will be automatically rescinded, and no doctrine of waiver, estoppel, or preclusion will be asserted in any litigated certification proceedings in this Action or any other judicial proceeding. No agreements made by or entered into by Celsius in connection with the Settlement Agreement may be used by Plaintiffs, any Class Member, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in this Action or any other judicial proceeding. In such event, the first amended complaint shall be deemed withdrawn and the original complaint shall be deemed the operative complaint when litigation resumes.

## 12. MISCELLANEOUS.

**12.1. Change of Time Periods.** The time periods and/or dates described in this Settlement Agreement are subject to Court approval and may be modified upon order of the Court or written stipulation of the Parties, without notice to Settlement Class Members. The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Settlement Agreement.

**12.2. Time for Compliance**. If the date for performance of any act required by or under this Settlement Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as it had been performed on the day or within the period of time specified by or under this Settlement Agreement.

**12.3. Entire Agreement.** This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein.

**12.4. Notices Under Agreement.** All notices or mailings required by this Agreement to be provided to or approved by Class Counsel, Defense Counsel, or either Party, or otherwise made pursuant to this Agreement, shall be provided as follows:

***If to Class Representatives or Class Counsel***
Ryan Clarkson
*rclarkson@clarksonlawfirm.com*
Clarkson Law Firm, P.C.
25525 Pacific Coast Highway
Malibu, CA 90265

***If to Celsius or Defense Counsel***
Jeffrey S. Jacobson
*Jeffrey.Jacobson@faegredrinker.com*
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, New York 10036

**12.5. Good Faith.** The Parties acknowledge that each intends to implement the Agreement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

**12.6. Binding on Successors.** This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the released Parties and persons.

**12.7. No Oral Modifications.** This Agreement may be amended only by means of a writing signed by the Parties.

**12.8. Parties Accept Risk of Changes in Fact and Law.** Each Party, including Plaintiffs on behalf of themselves and the Settlement Class, expressly accepts and assumes the risk that, if facts or laws pertinent to matters covered by this Agreement are hereafter found to be other than as now believed or assumed by that Party to be true or applicable, this Agreement shall nevertheless remain effective.

**12.9. Binding on Successors.** Except as specifically provided herein, this Agreement is binding on, and shall inure to the benefit of, the Parties, the Released Parties, and their respective direct and indirect parent companies, predecessor entities, successor entities, related companies, direct and indirect subsidiaries, holding entities, past and present affiliates, franchisees, distributors, wholesalers, retailers, advertising and production agencies, licensors, and agents, including all current and former officers, directors, managers, members, partners, owners, employees, shareholders, consultants, attorneys, legal representatives, insurers, agents, assigns, or other equity interest holders of any of the foregoing, and their heirs, executors, administrators, and

assigns. All Released Parties other than Defendant, which are Parties, are intended to be third-party beneficiaries of this Agreement.

**12.10. Evidentiary Preclusion.** The Parties agree that, to the fullest extent permitted by law, neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Party or the appropriateness of class certification in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. In addition, any failure of the Court to approve the Settlement and/or any objections or interventions may not be used as evidence in the Action or any other proceeding for any purpose whatsoever. However, the Released Parties may file this Agreement and Final Approval Order in any action or proceeding that may be brought against them in any jurisdiction to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

**12.11. No Reliance on Other Representations.** No Party has relied on any statement, representation, omission, inducement, or promise of any other Party (or any officer, agent, employee, representative, or attorney for any other Party) in executing this Agreement, or entering the Settlement provided for herein, except as expressly stated in this Agreement.

**12.12. Arms'-Length Negotiations.** This Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Class and other terms of this Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' private mediations with two respected former judges of the Superior Court of Los Angeles County, most recently, the Honorable Judge Peter Lichtman (Ret.) of Signature Resolution.

**12.13.** The Parties reached the Agreement after considering the risks and benefits of litigation. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.

**12.14. Publicity.** Until the Settlement is finally approved by the Court, the Parties and their counsel will not make any public statements about this Settlement inconsistent with announcements made in Celsius' 8-K and the Parties' Joint Notices of Settlement filed with the Court.

**12.15. Independent Advice.** Each Party has had the opportunity to receive, and has received, independent legal advice from his, her, or its attorneys regarding the advisability of making the Settlement, the advisability of executing this Agreement, and the legal and income tax consequences of this Agreement, and fully understands and accepts the terms of this Agreement.

**12.16. Requisite Corporate Power.** Defendant represents and warrants, severally and not jointly, that: (a) it has the requisite corporate power and authority to execute, deliver, and perform the Agreement and to consummate the transactions contemplated hereby; (b) the execution, delivery, and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of the Defendant; and (c) the Agreement has been duly and validly executed and delivered by the Defendant and constitutes its legal, valid, and binding obligation.

**12.17. Reasonable Best Efforts to Effectuate.** The Parties acknowledge that it is their intent to consummate this Agreement, and agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement. The Parties further agree they will not engage in any conduct that will or may frustrate the purpose of this Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Agreement.

**12.18. No Other Consideration.** Each Class Representative represents and warrants, severally and not jointly, that he is entering into the Agreement on behalf of himself individually and as a proposed representative of the Settlement Class Members, of his own free will and without the receipt of any consideration other than what is provided in this Agreement or disclosed to, and authorized by, the Court. Each Class Representative represents and warrants, severally and not jointly, that he has reviewed the terms of the Agreement in consultation with Class Counsel and believes them to be fair and reasonable, and covenants that he will not file an Opt-Out request or object to this Agreement.

**12.19. Non-assignment.** Plaintiffs represent and warrant, severally and not jointly, that no portion of any claim, right, demand, action, or cause of action against any of the Released Parties that Plaintiffs have or may have arising out of the Action or pertaining to their purchase and/or use of the Products and/or the design, manufacture, testing, marketing, Labeling, packaging, or sale of the Product otherwise referred to in this Agreement, and no portion of any recovery or settlement to which Plaintiffs may be entitled, has been assigned, transferred, or conveyed by or for Plaintiffs in any manner; and no Person other than Plaintiffs have any legal or equitable interest in the claims, demands, actions, or causes of action referred to in this Agreement as those of Plaintiffs themselves.

**12.20. Support from the Parties.** After a full investigation, discovery and arms-length negotiations, the Parties and their counsel agree that they: (a) have independently determined that the Settlement is in the best interest of the Settlement Class; (b) shall support motions for entry of the Preliminary Approval Order and Final Approval Order; and (c) will not encourage any Persons to Opt-Out or file Objections to the Settlement or this Agreement.

**12.21. Stay Pending Court Approval.** Plaintiffs' Counsel and Defendant's Counsel agree to stay all proceedings in the Actions, other than those proceedings necessary to carry out or

enforce the terms and conditions of the Settlement, until the Effective Date of the Settlement has occurred. If, despite the Parties' best efforts, this Agreement should fail to become effective, the Parties will return to their prior positions in the Actions.

**12.22. Exhibits.** All Exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

**12.23. Variance; Dollars.** the event of any variance between the terms of this Agreement and any of the Exhibits hereto, the terms of this Agreement shall control and supersede the Exhibit(s). All references in this Agreement to "Dollars" or "$" shall refer to United States dollars.

**12.24. Waiver.** The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**12.25. Modification in Writing Only.** This Agreement and any and all parts of it may be amended, modified, changed, or waived only by a writing signed by duly authorized agents of Celsius and Plaintiffs.

**12.26. Headings.** The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

**12.27. Governing Law.** This Agreement shall be interpreted, construed and enforced according to the laws of the State of California, without regard to conflicts of law.

**12.28. Continuing Jurisdiction.** After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

**12.29. Execution.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (e.g., PDF copies) shall be given the same force and effect as original signed documents.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: 11/17/2022 ______________

Amit Hezi ______________
Amit Hezi

Dated: 11/17/2022 ______________

______________
Joseph Nina

Dated: 11/17/2022 ______________

______________
Daniel Prescod

Dated: 11/21/2022 ______________

DocuSigned by: Jarrod Langhans
8CB4437EEBC24CF...
Celsius Holdings, Inc.
By: Jarrod Langhans ______________
Its: CFO ______________

**APPROVED AS TO FORM:**

11/17/2022
DATED: November___, 2022

**CLARKSON LAW FIRM, P.C.**

Ryan Clarkson ______________
Ryan J. Clarkson
Bahar Sodaify
Zachary Chrzan

*Attorneys for Plaintiffs and the Settlement Class*

DATED: November___, 2022

**FAEGRE DRINKER BIDDLE & REATH LLP**

______________
Jeffrey S. Jacobson
Lawrence G. Scarborough
Tarifa B. Laddon
Maria S. Downham

*Attorneys for Defendant*

DocuSign Envelope ID: BB9BA417-D740-4213-A8E2-F8DAC4AAF225

Dated: 11/17/2022 — Amit Hezi

Dated: 11/17/2022 — Joseph Mina

Dated: 11/17/2022 — Daniel Prescod

Dated: ____________

Celsius Holdings, Inc.
By: ____________
Its: ____________

**APPROVED AS TO FORM:**

DATED: November 11/17/2022, 2022

**CLARKSON LAW FIRM, P.C.**

Ryan J. Clarkson
Bahar Sodaify
Zachary Chrzan

*Attorneys for Plaintiffs and the Settlement Class*

DATED: November 18, 2022

**FAEGRE DRINKER BIDDLE & REATH LLP**

Jeffrey S. Jacobson
Lawrence G. Scarborough
Tarifa B. Laddon
Maria S. Downham

*Attorneys for Defendant*

# EXHIBIT 1

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-VM**
**Settlement Agreement**
**Long Form Notice**

# If You Bought A Celsius Beverage Or Powdered Drink Between January 1, 2015, And November 23, 2022 Then You Could Be Entitled To Money From A Class Action Settlement.

*A court authorized this notice. This is not a solicitation from a lawyer.*

**Celsius Beverages**




A settlement has been reached between Celsius Holdings, Inc. (“Defendant”) and Amit Hezi, Joseph Nina, and Daniel Prescod (“Class Representatives” or “Plaintiffs”), individually and on behalf of the Settlement Class. The Settlement resolves class action lawsuits alleging Defendant labels its products misleadingly, including by describing them as containing “No Preservatives” despite containing citric acid. Defendant denies the allegations and contends that it added citric acid to its products only to add flavor and not as a preservative. The Court did not rule in favor of either side. The parties agreed to the Settlement to avoid the expense and risks of the lawsuit.

You are a Class Member if you are a resident of the United States who purchased any Celsius beverage, for personal or household consumption and not for resale or distribution, including the original Celsius beverages (at times labeled “Celsius Live Fit”), Celsius Heat, Celsius BCAA+Energy, and Celsius with Stevia), as well as Celsius On-The-Go and Flo Fusion powdered drinks (“Products”), between January 1, 2015 and November 23, 2022.

Class Members who previously purchased a can of Product during the Class Period may submit a claim to receive One Dollar ($1.00) for each can of Product. Class Members who previously purchased Celsius On-The-Go or Flo Fusion powdered drinks, which are typically sold in packages of 14, may submit a claim to receive $5.00 per package of 14.

Class Members who submit approved claims with receipts will be capped at a Cash Award of Two Hundred Fifty Dollars ($250.00) per household.
Class Members who previously purchased a Product but who cannot produce a receipt may submit a claim to receive up to Twenty Dollars ($20.00) per household.

Each Class Member may submit a claim either electronically through a settlement website or by mail.

If the total value of all approved Claims either exceeds or falls short of the funds available for distribution to Class Members, then the amounts of the cash payments will be reduced or increased pro rata, as necessary, to use all of the funds available for distribution to Class Members. Any such pro rata adjustment will be calculated prior to distribution of funds (i.e., will be made in a single distribution). Any pro rata upward adjustment shall be capped at two times the claimed amount.

**Please read this Notice carefully and in its entirety. Your rights may be affected by the Settlement of this lawsuit, and you have a choice to make now about how to act:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A VALID CLAIM BY FEBRUARY 13, 2023 | The only way to get a cash payment, if you qualify. |
| EXCLUDE YOURSELF FROM THE CLASS BY FEBRUARY 13, 2023 | You will not get any benefits under this Settlement. This is the only option that allows you to be part of any other lawsuit against Defendant about the legal claims in this case. |
| OBJECT TO THE SETTLEMENT BY FEBRUARY 13, 2023 | Tell the Court about why you don't like the Settlement. |
| GO TO A HEARING ON MARCH 31, 2023 | Ask to speak in Court about the Settlement. |
| DO NOTHING | Get no benefits. Give up rights to be part of any other lawsuit against Defendant about the legal claims in this case. |

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Cash payments for valid claims will be issued only if the Court approves the Settlement and after the time for appeals has ended and any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ..........................................................................................PAGE 4

1. Why was this notice issued?
2. What is the lawsuit about?
3. Why is this a class action?

4. Why is there a Settlement?

WHO IS IN THE SETTLEMENT ........................................................................ PAGE 5

5. How do I know if I am part of the Settlement?
6. I'm still not sure if I'm included in the Settlement.

THE SETTLEMENT BENEFITS—WHAT YOU GET ......................................................PAGE 5

7. What does the Settlement provide?
8. What am I giving up in exchange for the Settlement benefits?

HOW TO GET A CASH PAYMENT—SUBMITTING A VALID CLAIM FORM .........................PAGE 7

9. How can I get a cash payment?
10. When will I get my check?

EXCLUDING YOURSELF FROM THE SETTLEMENT .......................................................PAGE 7

11. If I exclude myself, can I get anything from the Settlement?
12. If I don't exclude myself, can I sue later?
13. How do I get out of the Settlement?

OBJECTING TO THE SETTLEMENT.........................................................................PAGE 8

14. How do I tell the Court I don't like the proposed Settlement?

OBJECTION AND OPT-OUT DIFFERENCES ..................................................................PAGE 9

15. What's the difference between objecting and excluding?

THE LAWYERS REPRESENTING YOU ......................................................................PAGE 9

16. Do I have a lawyer in the case?
17. How will the costs of the lawsuit and Settlement be paid?

THE COURT'S FAIRNESS HEARING .........................................................................PAGE 10

18. When and where will the Court decide whether to approve the Settlement?
19. Do I have to come to the hearing?
20. May I speak at the hearing?

IF YOU DO NOTHING ..........................................................................................PAGE 11

21. What happens if I do nothing at all?

GETTING MORE INFORMATION ............................................................................PAGE 11

22. How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed Settlement in this class action lawsuit, and about all of your options, before the Court decides whether to give "final approval" to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

The case is known as *Hezi v. Celsius Holdings, Inc.*, Case No. 1:21-cv-9892-VM, currently pending in the U.S. District Court for the Southern District of New York. The company they are suing, Celsius Holdings, Inc., is called the Defendant.

### 2. What is the lawsuit about?

On March 19, 2019, a class action lawsuit was filed against Defendant Celsius Holdings, Inc. entitled *Prescod v. Celsius Holdings, Inc.,* in Los Angeles Superior Court of California, Case No. 19STCV09321, alleging that the "No Preservatives" claim on the front of the Products violated state consumer protection laws (including California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et. seq*., California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq*., and California's Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq*.) and common law, and that as a direct result of such violations purchasers were economically injured. On November 23, 2021, a similar class action lawsuit was filed against Defendant Celsius Holdings, Inc. entitled *Hezi v. Celsius Holdings, Inc.,* in the New York District Court for the Southern District of New York, Case No. 21-cv-9892. All claims from *Prescod* and *Hezi* were brought together in the *Hezi* matter, and Plaintiffs have amended their claims to allege other issues with the labeling of Celsius's Products. The class action will resolve any and all claims purchasers may have with respect to the labeling of these products and Celsius has agreed, as part of the settlement, to change its labeling.

Defendant denies any wrongdoing or liability arising out of any of the facts or conduct alleged in the Action and believes that it has valid defenses to the allegations. The Court has not decided that Defendant did anything wrong, and the settlement does not mean Defendant broke the law. Both the Plaintiffs and Defendant believes that the settlement is fair, adequate, and reasonable and that it is in the best interests of the Settlement Class.

### 3. Why is this a class action?

In a class action one or more people called "Class Representatives" (in this case, the named Plaintiffs in *Hezi* and *Prescod*) sue on behalf of people who have similar claims. All of these people or entities are a "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a settlement?

Both sides agreed to the settlement to avoid the cost and risk of further litigation and trial. The settlement does *not* mean that any law was broken. Defendant denies all of the legal claims in this case. The Class Representatives and the lawyers representing them think the settlement is best for all Class Members.

WHO IS IN THE SETTLEMENT?

To see if you are affected or if you can get benefits, you first have to determine whether you are a Settlement Class Member.

## 5. How do I know if I am part of the Settlement?

You are a member of the Settlement Class if you purchased for personal or household consumption and not for resale or distribution, any Celsius beverage (at times labeled "Celsius Live Fit"), Celsius Heat, Celsius BCAA+Energy, and Celsius with Stevia), as well as Celsius On-The-Go and Flo Fusion powdered drinks, between January 1, 2015 and November 23, 2022. This time period is referred to as the "Class Period." Excluded from the Settlement Class are any officers, directors, or employees of Defendant, and the immediate family member of any such person. Also excluded is any judge presiding over this case.

## 6. I'm still not sure if I'm included in the Settlement.

If you are not sure whether you are included in the Class, call 1-855-737-1258 or go to www.CelsiusClassActionSettlement.com.

THE SETTLEMENT BENEFITS—WHAT YOU GET

## 7. What does the Settlement provide?

Celsius has agreed to make available a total Settlement Fund of Seven Million Eight Hundred Thousand Dollars ($7,800,000) ("Settlement Fund"). Class Members who submit a Valid Claim may receive a benefit from the Settlement Fund.

Class Members who previously purchased a can of Product during the Class Period may submit a claim to receive One Dollar ($1.00) for each can of Product. Class Members who previously purchased Celsius On-The-Go and Flo Fusion powdered drinks, which are typically sold in packages of 14, may submit a claim to receive $5.00 per package of 14.

Class Members who submit approved claims with receipts will be capped at a Cash Award of Two Hundred Fifty Dollars ($250.00) per household.

Class Members who previously purchased a Product but who cannot produce a receipt may submit a claim to receive up to Twenty Dollars ($20.00) per household.

Each Class Member may submit a claim either electronically through a Settlement Website or by mail.

If the total value of all approved Claims either exceeds or falls short of the funds available for distribution to Class Members, then the amounts of the cash payments will be reduced or increased pro rata, as necessary, to use all of the funds available for distribution to Class Members. Any such pro rata adjustment will be calculated prior to distribution of funds (*i.e.*, will be made in a single distribution). Any pro rata upward adjustment shall be capped at two times the claimed amount.

Those Class Members whose payments are not cleared within one hundred and eighty (180) calendar days after issuance will be ineligible to receive a cash settlement benefit and the Class Administrator will have no further obligation to make any payment from the Settlement Fund pursuant to this Settlement Agreement or otherwise to such Class Member. Any funds that remain unclaimed or are unused after the distribution of the Settlement Fund will be distributed to a charity approved by the Court. Instructions for submitting a Claim are included in Section 9 below.

The parties have further agreed that the costs to administer this Settlement will be paid from the Settlement Fund, that Class Counsel may request reasonable attorneys' fees of $2,600,000 and litigation expenses not to exceed $300,000 upon Court approval, and that the Class Representatives may apply for an enhancement award of up to Twenty Thousand Dollars ($20,000) from the Court. More details are in a document called the Settlement Agreement, which is available at www.CelsiusClassActionSettlement.com.

## 8. What am I giving up in exchange for the Settlement benefits?

If the Settlement becomes final, Class Members will be releasing Defendant and all related people and entities for all the claims described and identified in Section 8 of the Settlement Agreement ("Release") and is included below:

> The Releasing Parties hereby fully release and forever discharge the Released Parties from any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, asserted or unasserted, claims, demands, liabilities, rights, debts, obligations, liens, contracts, agreements, judgments, actions, suits, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, penalties, fees, attorneys' fees, and/or obligations of any nature whatsoever (including "Unknown Claims" as defined below), whether at law or in equity, accrued or unaccrued, whether previously existing, existing now or arising in the future, whether direct, individual, representative, or class, of every nature, kind and description whatsoever, based on any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, relating in any way to any conduct prior to the date of the Preliminary Approval Order and that: (a) is or are based on any act, omission, inadequacy, misstatement, representation (express or implied), harm, matter, cause, or event related to any Product; (b) involves legal claims related to the Products that have been asserted in the Actions or could have been asserted in the Actions; or (c) involves the advertising, marketing, promotion, purchase, sale, distribution, design, testing, manufacture, application, use, performance, warranting, packaging or Labeling of the Products (collectively, the "Released Claims"). The Parties acknowledge

and agree that bodily injury, wrongful death, and/or emotional distress claims arising from personal injury, are not part of any of the facts alleged by Class Representatives and that such claims are not included within the Released Claims.

Notice of the Court's final judgment will be effected by posting it on the Class Administrator's website and by posting a copy of the final judgment and final approval order on the Class Administrator's website at www.CelsiusClassActionSettlement.com. The full Settlement Agreement is available at www.CelsiusClassActionSettlement.com. The Settlement Agreement describes the Released Claims with specific descriptions, in necessarily accurate legal terminology, so please read it carefully. You can talk to one of the lawyers listed below for free or you can, of course, talk to your own lawyer if you have questions about the released claims or what they mean.

## HOW TO GET A CASH PAYMENT—SUBMITTING A VALID CLAIM FORM

### 9. How can I get a cash payment?

To ask for a Cash Award you must complete and submit a Valid Claim Form along with the required supporting documentation, if you have it. You can get a Claim Form at www.CelsiusClassActionSettlement.com. You may also submit your claim via the website. The Claim Form describes what you must provide to prove your claim and receive a Cash Award and generally requires information regarding the quantity of Products you purchased during the Class Period. Please read the instructions carefully, fill out the Claim Form, and either submit it online at www.CelsiusClassActionSettlement.com or mail it postmarked no later than, **February 13, 2023**, to:

Celsius Class Administrator
P.O. Box 4325
Baton Rouge, LA 70821

The Class Administrator may seek additional information to validate the Claim Form and/or disqualify an invalid Claim. If you provide incomplete or inaccurate information, your Claim may be denied.

### 10. When will I get my payment?

Payments will be sent to Class Members who send in Valid Claim Forms on time, after the Court grants "final approval" of the Settlement, and after the time for appeals has ended and any appeals have been resolved. If the judge approves the Settlement after a hearing on **March 31, 2023** (*see* the section "The Court's Fairness Hearing" below), there may be appeals. Resolving these appeals can take time. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Defendant over the legal issues in this case, you must take steps to get out of the Settlement. This is called asking to be excluded from—sometimes called "opting out" of—the Class.

## 11. If I exclude myself, can I get anything from the Settlement?

If you ask to be excluded, you will not get a Cash Award under the Settlement, and you cannot object to the Settlement. But you may be part of a different lawsuit against Defendant in the future. You will not be bound by anything that happens in this lawsuit.

## 12. If I don't exclude myself, can I sue later?

No. Unless you exclude yourself, you give up the right to sue Defendant for the claims that this Settlement resolves. You must exclude yourself from *this* Class to start or continue your own lawsuit.

## 13. How do I get out of the Settlement?

To opt out of the Settlement, you must send a letter by mail saying that you want to be excluded from *Hezi v. Celsius Holdings, Inc.,* U.S. District Court for the Southern District of New York, Case No. 1:21-cv-9892-VM. Be sure to include your name, address, telephone number, the approximate date of purchase, and your signature. You can't ask to be excluded at the website or on the phone. You must mail your opt out request postmarked no later than **February 13, 2023** to:

Celsius Class Administrator
P.O. Box 4325
Baton Rouge, LA 70821

Requests to opt out that do not include all required information and/or that are not submitted on a timely basis, will be deemed null, void, and ineffective. Settlement Class Members who fail to submit a valid and timely Request for opting out on or before the deadline above shall be bound by all terms of the Settlement and any Final Judgment entered in this litigation if the Settlement is approved by the Court, regardless of whether they ineffectively or untimely requested exclusion from the Settlement.

# OBJECTING TO THE SETTLEMENT

## 14. How do I tell the Court I don't like the proposed Settlement?

To object to the Settlement, you or your attorney must send a written objection to the Class Administrator showing the basis for your objections. Your objection must contain the following information:

(i) A caption or title that clearly identifies the Action (*Hezi v. Celsius Holdings, Inc.*, Case No. 1:21-cv-9892-VM (S.D.N.Y.) and that the document is an objection;
(ii) Your name, current address, and telephone number or your lawyer's name, address, and telephone number if you are objecting through counsel;
(iii) What Product(s) you bought during the Class Period;
(iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection,
(v) If applicable, the identity of any other objections you or your counsel submitted to any other class action settlements including the case name, case number, and court, the general nature of such

prior objection(s), and the outcome of said prior objection(s) (or a statement that you and/or your attorneys have submitted no such objections);

(vi) Your signature attesting that all facts are true and correct; and

(vii) If applicable, the signature of your counsel (the "Objection").

Any objection to the Settlement must be postmarked on or before the Objection Deadline, and sent to the Class Administrator at the addresses set forth in the Class Notice. The Court may, but is not required to, hear Objections in substantial compliance with these requirements, so Settlement Class Members should satisfy all requirements.

You or your lawyer may, but are not required to, appear at the Final Approval Hearing. If you or your lawyer wish to appear at the Final Approval Hearing, you must file with the Court a Notice of Intention to Appear along your written objection no later than **February 13, 2023**. You must file your Notice of Intention to Appear by certified mail or in person, along with any other supporting materials to: Clerk, United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007. Your written objection must be marked with the Case name and Case Number (*Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-9892, U.S. District Court for the Southern District of New York). In addition, you must also send copies of all documents you file with the Court to:

Ryan J. Clarkson
*rclarkson@clarksonlawfirm.com*
Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Jeffrey S. Jacobson
*jeffrey.jacobson@faegredrinker.com*
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10034, USA

The Court may only require substantial compliance with the requirements for submitting an objection. The requirement to submit a written objection may be waived upon a showing of good cause.

## OBJECTION AND OPT-OUT DIFFERENCES

### 15. What is the difference between objecting and opting out?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, Defendant as part of any other lawsuit involving the same claims that are in this lawsuit. Opting out is telling the Court that you don't want to be part of the Class. If you opt out, you have no basis to object because the case no longer affects you. You cannot both opt out of and object to the Settlement. If a person attempts to do both, the Court will treat the submissions as an opt-out.

## THE LAWYERS REPRESENTING YOU

## 16. Do I have a lawyer in the case?

The Court has designated Ryan J. Clarkson, Bahar Sodaify, and Zachary T. Chrzan of Clarkson Law Firm, P.C., 22525 Pacific Coast Highway, Malibu, CA 90265 to represent you as "Class Counsel." You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

## 17. How will the costs of the lawsuit and Settlement be paid?

The Class Administrator's and Notice Provider's costs and fees associated with administering the Settlement, including all costs associated with the publication of the Notice of Settlement will be paid out of the Settlement Fund and shall not exceed $845,000, inclusive of postage. Class Counsel's reasonable attorneys' fees and costs related to obtaining the Settlement consistent with applicable law will also be paid out of the Settlement Fund, subject to Court approval.

The Class Representatives will also request that the Court approve a payment to them of up to $20,000 total from the Settlement Fund, as incentive awards for their participation as the Class Representatives, for taking on the risk of litigation, and for settlement of their individual claims as Class Members in the settled Actions. The amounts are subject to Court approval and the Court may award less.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. If you have filed an objection on time, you may attend and you may ask to speak, but you don't have to.

## 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at 11:00 a.m. on **March 31, 2023**, at the U.S. District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007. The hearing may be moved to a different date or time without additional notice, so please check for updates at www.CelsiusClassActionSettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. In order to speak at the Fairness Hearing, you must file a notice of intention to appear with the Clerk. The Court will also decide how much to pay the Class Representatives and the lawyers representing Class Members. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

## 19. Do I have to come to the hearing?

No. Class Counsel will answer any questions the judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you

mailed your written objection on time, the Court will consider it. If you have sent an objection but do not come to the Court hearing, however, you will not have a right to appeal an approval of the Settlement. You may also pay another lawyer to attend on your behalf, but it's not required.

## 20. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear" in the *Hezi v. Celsius Holdings, Inc.* litigation. Be sure to include your name, address, telephone number, and your signature as well as the name, address and telephone number of any lawyer representing you (if applicable). Your Notice of Intent to Appear must be postmarked no later than no later than **February 13, 2023** and be sent to the addresses listed in Questions 13 and 14. You cannot speak at the hearing if you excluded yourself from the Class.

IF YOU DO NOTHING

## 21. What happens if I do nothing at all?

If you are a Class Member and do nothing, you will not receive a payment from this Settlement. And, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendant about the claims in this case, ever again.

GETTING MORE INFORMATION

## 22. How do I get more information?

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement, download a Claim Form, and review additional case information at www.CelsiusClassActionSettlement.com. You may also call toll-free at 1-855-737-1258.

**PLEASE DO NOT TELEPHONE THE DEFENDANT, THE COURT, OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

DATED: December 14, 2022

**BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

# EXHIBIT 2

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-VM**
**Settlement Agreement**
**Short Form Notice**

# LEGAL NOTICE

## If You Purchased A Celsius Beverage or Powdered Drink Between January 1, 2015 And November 23, 2022, Then You Could Be Entitled To Money From A Class Action Settlement

*Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-9892-VM
U.S. District Court for the Southern District of New York

### What Is This Notice About?

A lawsuit pending in the U.S. District Court for the Southern District of New York ("Litigation") may affect your rights. The Litigation claims Celsius Holdings, Inc. ("Defendant") deceptively labeled its products as containing "No Preservatives," when they contain citric acid, which Defendant contends it added to its products only to add flavor and not as a preservative. The Court did not rule in favor of Plaintiff or Defendant. The parties instead agreed to settle.

### Am I A Member Of The Class?

You are a Class Member if you are a resident of the United States who purchased any Celsius beverage, for personal or household consumption and not for resale or distribution, including the original Celsius beverages (at times labeled "Celsius Live Fit"), Celsius Heat, Celsius BCAA+Energy, and Celsius with Stevia), as well as Celsius On-The-Go and Flo Fusion powdered drinks ("Products"), between January 1, 2015 and November 23, 2022.

### What Does The Settlement Provide?

With Court approval, the Settlement provides a Cash Award to Class Members that submit a valid and timely Claim Form. Class Members who previously purchased a can of Product during the Class Period may submit a claim to receive One Dollar ($1.00) for each can of Product. Class Members who previously purchased Celsius On-The-Go or Flo Fusion powdered drinks, which typically are sold in packages of 14, may submit a claim to receive $5.00 per package of 14. Class Members who submit approved claims with receipts will be capped at a Cash Award of Two Hundred Fifty Dollars ($250.00) per household. Class Members who previously purchased a Product but who cannot produce a receipt may submit a claim to receive up to Twenty Dollars ($20.00) per household.

If the total value of all approved Claims either exceeds or falls short of the funds available for distribution to Class Members, then the amounts of the cash payments will be reduced or increased pro rata, as necessary, to use all of the funds available for distribution to Class Members. Any such pro rata adjustment will be calculated prior to distribution of funds (i.e., will be made in a single distribution). Any pro rata upward adjustment shall be capped at two times the claimed amount. Any funds that remain unclaimed or are unused after the distribution of the Settlement Fund will be distributed to charities approved by the Court. The Settlement also provides for modification of Defendant's Product advertising and labeling, including removal of the "No Preservatives" label claim.

### What Are My Rights And Options?

You have three options:
**You Can Make A Claim**. Class Members who wish to receive a Cash Award **must** submit a Claim Form by visiting the Settlement Website, **www.CelsiusClassActionSettlement.com,** and submitting (or printing and mailing) a Claim Form. The deadline to **postmark or submit your claim online is February 13, 2023.**
**You Can Object to the Settlement**. You may also object to any part of this Settlement. Objections must be mailed to the Class Administrator and **postmarked no later than February 13, 2023.**
**You Can "Opt Out" of the Settlement**. You can exclude yourself ("opt out") of the Settlement by submitting an exclusion request to the Class Administrator that is **postmarked no later than February 13, 2023.** This is the only option that allows you to be part of any other lawsuit against Defendant about the legal claims in this case.

Details about how to opt-out, object, and submit your Claim Form are available on the Settlement Website.

### The Fairness Hearing

On **March 31,2023 at 11:00 am**, the Court will hold a hearing at the U.S. District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007 to approve: (1) the Settlement as fair, reasonable, and adequate; and (2) the application for Plaintiffs' attorneys' fees of $2,600,000 and reimbursement of litigation expenses up to $300,000, and payment of up to $20,000 in total to the Class Representatives. Class Members who support the proposed settlement do not need to appear at the hearing or take any other action to indicate their approval.

### How Can I Get More Information?

This is only a summary of the settlement. If you have questions or want to view the detailed notice or other documents about the Litigation, including the Settlement Agreement visit **www.CelsiusClassActionSettlement.com,** contact Class Counsel at info@clarksonlawfirm.com, or call the Class Administrator at **1-855-737-1258**.

**BY ORDER OF THE U.S. DISTRICT COURT OF THE SOUTHERN DISTRICT OF NEW YORK**

# EXHIBIT 3

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-VM**
**Settlement Agreement**
**Notice Plan**

# Notice Plan

## CLASS DEFINITION

Pursuant to the Settlement Agreement, the Class is defined as:

> All persons in the United States who, between January 1, 2015 and [DATE OF PRELIM APPROVAL] (the "Class Period"), purchased in the United States, for personal or household consumption and not for resale or distribution, one of the Class Products[1]. Excluded from the Settlement Class are: (1) the presiding judges in the Actions; (2) any member of those judges' immediate families; (3) Defendant; (4) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (5) counsel for the Parties; and (6) any persons who timely opt-out of the Settlement Class.

## TARGET AUDIENCE AND RESEARCH

To build a Notice Plan that adheres to Fed. R. Civ. P. 23 and the recommendations in the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)*[2], P&N developed a target audience that closely follows the class definition to provide statistical measurements, reach, and frequency analysis. The audience developed is a qualitative target of "Adults 18 years old and older in the United States that have purchased energy drinks in the last 6 months" ("Target Audience"). This Target Audience encompasses members of the Class and accounts for individuals that may not have brand loyalty to Celsius Live Fit ("Celsius") beverages.

Available data across MRI-Simmons ("MRI")[3] comScore[4], and Basis Audience Measurement Tools[5], among others, provide insight into the Target Audience. An analysis of the demographic and

[1] Any Celsius beverage, including the original Celsius beverages (at times labeled "Celsius Live Fit"), Celsius Heat, Celsius BCAA+Energy, and Celsius with Stevia), as well as Celsius On-The-Go and Flo Fusion powdered drinks.

[2] https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide

[3] MRI-Simmons is a nationally-syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. MRI-Simmons conducts more than 30,000 personal interviews annually to gather their information and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

[4] comScore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes.

[5] Basis provides a digital advertising solution that includes advanced planning and audience measurement tools. Basis has access to more than 30 exchanges, 20 third-party data providers, six billion users and two trillion impressions per month. Basis audience measurement tools allow you to accurately forecast the audience and impression availability for the specific targets of your plan.

psychographic information of the Class and Target Audience cultivated the targeted Notice Plan and will be used to manage the segment targeting during implementation.

A summary of relevant characteristics developed using MRI include:









Key information about the Target Audience's access to the internet and language highlights the necessity for notice placement across a diverse set of media channels that provide an opportunity to run notices in English and Spanish, and on both desktop and mobile platforms.

Additional demographic data includes:

- 66% of the Target Audience are medium-to-heavy users of the internet
  - 97% have used the internet in the past 30 days
  - 89% have used a cellular or smartphone device to access the internet
  - 42%, 60%, and 33% have used a desktop, laptop, or tablet, respectively, to access the internet
- 89% of the Target Audience have used any social media, photo, or video sharing platform
  - The Target Audience is 27% more likely to share videos on social media than adults ages 18 and older.
  - 51% watched a video on social media
- The Target Audience has a mean household income of $97,7000 and a mean individual income of $57,400
- 57% of the Target Audience exercise at least two times a week
- 33% of the Target Audience play sports at least two times a week
- 24% of the Target Audience speak Spanish most often at home
  - 23% are of Hispanic, Spanish, or Latin origin

## METHODS OF CLASS NOTICE & IMPLEMENTATION STRATEGY

The methods of notice were established based on a review of past implementation strategies and statistics developed using syndicated research. The precise strategy, timing, and budget can be amended if more information becomes available. The objective of the program is to provide the best notice practicable under the circumstances, utilizing a mix of messaging tactics across digital platforms and streaming radio.

## Digital Media

The banner notices will have the opportunity to run on thousands of websites through Basis (formerly known as Centro) programmatic demand-side platform (DSP), Facebook, Instagram, TikTok, and YouTube. Ads will include a mix of segments that will target Class Members based on demographic, affinity (behavioral), contextual, language, interest-based, engagement, and retargeting strategies. Segmentation will include:

- Demographic Targeting
  - Targeting individuals that share demographic traits of our Target Audience such as age and income.
- Affinity Behavioral Targeting
  - Targeting is determined by the user's behavior. This includes the types of websites they have visited and content they have consumed. Using the advanced algorithms of Basis and the social media platforms, we can target specific audience categories that include individuals that have purchased energy drinks and those that previously viewed or searched for information related to Celsius.
- Contextual Targeting
  - Users that visit a web page that has key terms such as "Celsius" and/or words related to energy drinks and fitness, we can serve notice while they browse the sites content.
- Interest-Based Targeting
  - Across social media channels, individuals that "like" content related to Celsius and/or posts related to Celsius.
- Engagement Targeting
  - Individuals that have interacted, liked, shared or commented on content related to Celsius, for example, can be segmented and served notice
- Individuals who utilize either English or Hispanic websites
- Retargeting across display and social media channels to individuals that have not submitted a claim
- Individuals on both desktop and mobile devices

The banner notices will appear on high-performing sites that demographic research has revealed the Target Audience visits often, as well as alongside content that is relevant to the litigation. These sites may include ESPN.com, Weather.com, WebMD.com, CNN.com, FoxNews.com, Fox Sports.com, Univision.com, and many others. An estimated 88 million impressions will be served.

**Facebook and Instagram**

In the U.S., Facebook and Instagram represent the leading group of social network sites with over 250 million users in the United States[6], which provides an opportunity to reach a broad audience across a large footprint. Additionally, social media encourages users to share content with their friends, which can organically aid the reach of the notice plan. Facebook and Instagram notices will appear in a user's feed and include a short call to action and description, relevant imagery, and the Settlement Website that users can engage with, and click on, to learn more about the litigation. An estimated 39 million impressions will be served across these social media platforms.

---

[6] "Number of Facebook users in United States from 2018 to 2027" (Statista; June 2022), and "Number of Instagram users in the United States from 2020 to 2023" (Statista; May 2021).

**TikTok**

TikTok is a popular social media video platform where users can create, watch, and share 15-second videos. TikTok has more than 90 million users in the United States.[7] According to MRI research, 25% of our Target Audience use TikTok and they are also 39% more likely to use TikTok than adults ages 18 and older. An estimated 19 million impressions will be served.

**YouTube**

There are over 2 billion logged-in user visits to YouTube each month[8] and according to Similarweb statistics, YouTube is the second most engaged site in the world where users spend an average of 21 minutes per day[9]. With such a wide and captive audience, YouTube provides an excellent opportunity to share class action notices with an engaged audience. An estimated 12 million impressions will be served across the platform using a mix of display and video.

**Search Advertising**

Search-based advertising places notice in front of users that are actively researching a topic. Utilizing Google Ads, a select list of keywords will be developed that are relevant to the litigation. When a user enters those keywords into the Google search bar, a short descriptive notice may appear above the results that would direct users to the Settlement Website.

## Streaming Radio

**Spotify**

Spotify radio has more than 450 million monthly active users and more than 270 million ad-supported monthly active users globally. [10] In addition, 36% of the Target Audience listens to Spotify and they are 29% more likely to use Spotify than adults ages 18 and older. A 30-second non-skippable radio notice will be recorded and targeted to music categories, playlists and podcasts such as: 20 Minute Fitness; Fitness Playlists; Mind Pump: Fitness Motivation; and more. When the radio notice airs, a companion banner may appear on the listeners mobile or desktop device. The banner can be interacted with and will take the listener to the Settlement Website. Over a four-week period, an estimated 930,000 impressions will be served.

## Earned Media

A press release will be distributed across PR Newswire's US1 and Hispanic newslines to more than 20,000 media contacts in the United States. The press release will provide cost effective coverage across English and Hispanic channels and provide an opportunity to be "picked up" by media outlets.

---

[7] "Number of TikTok users in the United States from 2019 to 2025" (Statista; October 2022).

[8] https://blog.youtube/press

[9] https://www.similarweb.com/top-websites

[10] Spotify Shareholder Report, October 25, 2022

## SUMMARIZED NOTICE PLAN

A robust four-week Notice Plan designed to reach at least 80%, with a frequency of 3.00, of the Target Audience across multiple channels:

- Estimated Basis impressions: 88,435,000
- Estimated Facebook and Instagram impressions: 39,200,000
- Estimated TikTok impressions: 19,600,000
- Estimated YouTube impressions: 12,152,000
- Estimated Spotify Impressions: 931,000
- Google Ads impressions: TBD
- Press release distributed to more than 20,000 English and Hispanic media contacts across the United States

## CONCLUSION

In 2010, the Federal Judicial Center issued the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.* The guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." This proposed Notice Plan is designed to exceed the minimum threshold set forth in the FJC guidelines and the measurable reach of the Notice Plan does not include the press release, paid search, dedicated website, and toll-free hotline, as these vehicles are difficult to calculate. They, however, will meaningfully strengthen the reach and frequency of the Notice Plan.

# EXHIBIT 4

***Hezi, et al. v. Celsius Holdings, Inc.***

**Case No. 1:21-cv-09892-VM**

**Settlement Agreement**

**Proposed Final Approval Order**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMIT HEZI, JOSEPH NINA, and DANIEL PRESCOD individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELSIUS HOLDINGS, INC,<br><br>Defendant. | Case No. 1:21-cv-09892-VM |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND INCENTIVE AWARDS, AND FINAL JUDGMENT**

WHEREAS, Plaintiffs' Motion for Final Approval of Class Action Settlement came on for hearing before this Court on [TBD] with Class Counsel Clarkson Law Firm, P.C. ("Class Counsel") appearing on behalf of Amit Hezi, Joseph Nina, and Daniel Prescod ("Class Representatives" or "Plaintiffs"), and Faegre Drinker Biddle & Reath LLP appearing on behalf of Celsius Holdings Inc. ("Defendant" or "Celsius") (collectively, the "Parties").

WHEREAS, on March 19, 2019, Class Representative Daniel Prescod filed *Prescod v. Celsius Holdings, Inc.*, LASC No. 19STCV09321 (Los Angeles Cty. Super. Ct.) ("*Prescod*").

WHEREAS, on November 23, 2021, Class Representatives Amit Hezi and Joseph Nina filed this action ("*Hezi*," and together with *Prescod*, the "Actions").

WHEREAS, Plaintiffs allege in the Actions that Defendant deceptively and unlawfully labeled, packaged, and marketed the Products.

WHEREAS, Plaintiffs filed an amended complaint in this action on [TBD] to facilitate their pursuit and resolution of claims on behalf of all Settlement Class Members in a single action before this Court (the "Main Action").

WHEREAS, the Parties have submitted their Settlement, which this Court preliminarily approved on [TBD] ("Preliminary Approval Order").

WHEREAS, the Preliminary Approval Order established an Objection, Opt-Out, and Claims Deadline of [TBD].

WHEREAS, in accordance with the Preliminary Approval Order, Class Members have been given notice of the terms of the Settlement and the opportunity to object to or exclude themselves from its provisions.

WHEREAS, having received and considered the Settlement, all papers filed in connection therewith, including Plaintiffs' Motion for Final Approval of Class Action Settlement, Plaintiffs' Motion for Award of Attorneys' Fees and Costs, and Plaintiffs' Motion for Approval of Incentive Awards, and the evidence and argument received by the Court at the hearing before it entered the Preliminary Approval Order and at the final approval hearing on [TBD], the Court HEREBY ORDERS and MAKES DETERMINATIONS as follows:

1. Incorporation of Other Documents. The Settlement Agreement, including its exhibits, and the definitions of words and terms contained therein are incorporated by reference in this Order. The terms of this Court's Preliminary Approval Order are also incorporated by reference in this Order.

2. Jurisdiction. This Court has jurisdiction over the subject matter of this Action and

over the Parties, including all members of the following Settlement Class certified for settlement purposes in this Court's Preliminary Approval Order pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3):

> All persons in the United States who, between January 1, 2015 and the date of entry of this Order, purchased in the United States, for personal or household consumption and not for resale or distribution, one of the Class Products.

Excluded from the Settlement Class are: (1) the presiding judges in the Actions; (2) any member of those judges' immediate families; (3) Defendant; (4) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (5) counsel for the Parties; and (6) any persons who timely opt-out of the Settlement Class.

3. Class Certification. The Court finds and determines that the Settlement Class, as defined in the Settlement Agreement and above, meets all of the legal requirements for class certification for settlement purposes under Fed. R. Civ. P. 23(a), (b)(2) (with respect to the settlement's injunctive relief), and (b)(3), and it is hereby ordered that the Class is finally certified for settlement purposes.

4. Pursuant to the Settlement Agreement, and for settlement purposes only, the Court finds as to the Settlement Class with respect to all aspects of the Settlement Agreement except the provisions of section 5 thereof that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied in that:

a. The Settlement Class is so numerous that joinder of all members is impracticable;

b. There are questions of law or fact common to the Settlement Class;

c. The claims of the Class Representatives are typical of the claims of the Settlement Class;

d. The Class Representatives have fairly and adequately protected the interests of the Settlement Class and are, therefore, appointed as Class Representatives;

e. Clarkson Law Firm, P.C. has fairly and adequately protected the interests of the Settlement Class and are qualified to represent the Settlement Class and are, therefore, appointed as Class Counsel;

f. The questions of law and fact common to the Settlement Class predominate over the questions affecting only individual members; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

5. Pursuant to the Settlement Agreement, and for settlement purposes only, for purposes of the injunctive relief specified in section 5 of the Settlement Agreement, the Court further finds as to the Settlement Class that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and (b)(2) have been satisfied in that:

a. The Settlement Class is so numerous that joinder of all members is impracticable;

b. There are questions of law or fact common to the Settlement Class;

c. The claims of the Class Representatives are typical of the claims of the Settlement Class;

d. The Class Representatives and Class Counsel have fairly and adequately protected the interests of the Settlement Class;

e. Defendant has acted or refused to act on grounds generally applicable to the Settlement Class, thereby making appropriate final injunctive relief with respect to the Settlement Class as a whole.

6. Adequate Representation. The Court orders that Class Representatives Amit Hezi, Joseph Nina, and Daniel Prescod are appointed as the Class Representatives. The Court also orders that Clarkson Law Firm, P.C. is appointed Class Counsel. The Court finds that the Class Representatives and Class Counsel fairly and adequately represent and protect the interests of the absent Settlement Class Members in accordance with Fed. R. Civ. P. 23.

7. Arms-Length Negotiations. The Court finds that the proposed Settlement is fair, reasonable, and adequate based on the value of the Settlement, and the relative risks and benefits of further litigation. The Settlement was arrived at after sufficient investigation and discovery and was based on arms-length negotiations, including two mediations.

8. Class Notice. The Court finds that the approved Notice Plan has been satisfactorily and substantially implemented. Pursuant to the Preliminary Approval Order, Notices of Class Action Settlement (hereinafter referred to the "Notice") were published as follows:

a. A Settlement Website (www.CelsiusClassActionSettlement.com), e-mail address ([TBD]) telephone number ([TBD]), and mailing address ([TBD]) were set up on or before [TBD].[1] The contact information was also provided on the Settlement Website and in any print-media notices.

b. Since its implementation, the Settlement Website has set forth, in large text, the deadlines for claims, objections, and requests for exclusion from the

[1] Pursuant to this Court's order preliminarily approving the settlement, notice commenced on [TBD].

Settlement Class as well as the date of the Final Fairness Hearing. It also contains easily accessible links to the short form and long form notices, Preliminary Approval Order, Settlement Agreement, and Preliminary Approval Motion (including all related paperwork).

c. [TBD details re notice, online ads, etc.]

d. All online advertisements directed potential Settlement Class Members to the Settlement Website, where they could download all important documents, review frequently asked questions, review the long form and short form notices, and file a claim.

e. A toll-free number with an Interactive Voice Response ("IVR") system has been available since initiation of the Notice and remains available to answer questions regarding the settlement.

f. Weekly reports regarding submission of claims, objections, and requests for exclusion were provided to counsel for all parties, including Class Counsel, throughout the notice campaign. Additional reporting will continue after Final Approval to ensure proper oversight of the claims processes.

9. The Court finds that distribution of the Notice in the manner set forth in the Settlement Agreement constituted the best notice practicable under the circumstances, and constituted valid, due, and sufficient notice to all members of the Class. The Court finds that such notice complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable laws. The Notice informed the Settlement Class of: (1) the terms of the Settlement; (2) their right to submit objections, if any, and to appear in person or by counsel at the final approval hearing and to be heard regarding approval of the Settlement; (3) their right

to request exclusion from the Class and the Settlement; and (4) the location and date set for the final approval hearing. Adequate periods of time were provided by each of these procedures.

10. The Court finds and determines that the notice procedure carried out by P&N afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members. The Court finds and determines that the Notice was the best notice practicable, and has satisfied the requirements of law and due process.

11. Settlement Class Response. A total of XXXXXX Settlement Class Members submitted Approved Claims, and there have been X Objections to the Settlement (defined below) and X Requests for Exclusion.

a. [After careful consideration, the Court hereby overrules Objector X's Objection for the reasons stated on the record.]/[No Objections were received to the Settlement. This positive reaction by the Settlement Class demonstrates the strength of the Settlement.]

b. [The Court also hereby orders that each of the individuals appearing on the list annexed hereto as Exhibit A who submitted valid Requests for Exclusion are excluded from the Settlement Class. Those individuals will not be bound by the Settlement Agreement (except with respect to the injunctive relief specified in section 5 of the Settlement Agreement), and neither will they be entitled to any of its benefits.]/[No Settlement Class members opted out of the Settlement. This positive reaction by the Settlement Class demonstrates the strength of the Settlement.]

12. Final Settlement Approval. The Court hereby finally approves the Settlement Agreement, the exhibits, and the Settlement contemplated thereby ("Settlement"), and finds that the terms constituted, in all respects, a fair, reasonable, and adequate settlement as to all Settlement Class Members in accordance with Fed. R. Civ. P. 23 and direct consummation pursuant to its terms and conditions.

13. The Court finds that the Settlement Agreement provides substantial and meaningful monetary benefits to the Settlement Class as follows: Celsius agreed to provide cash benefits under a two-tiered structure with a gross potential payout of $7,800,000 (seven million and eight hundred thousand dollars) in the aggregate.

14. The Court finds that the Settlement Agreement also provides substantial and meaningful programmatic relief to the Settlement Class as follows: Celsius shall adopt new Labeling for the Products substantially similar to the new labeling agreed upon between Celsius and Plaintiffs ("New Labeling"). From that point forward, Defendant shall not produce Products with the prior Labeling challenged in the Actions. Among other things, the New Labeling does not contain a representation that the Product contains no preservatives, changes other marketing statements respecting the Product, and adopts a "nutrition facts panel" as opposed to the current Products' use of a "dietary supplement" label. Defendant agrees to use the New Labeling for a period of at least three years from the adoption of the New Labeling ("Restricted Period"), except that in the event of a change of majority ownership of Defendant, this requirement will not be binding on a successor owner. During that period of no less than three years, commencing on the date that Celsius first ships products with the New Labeling, Defendant may adopt changes to the Labeling of the Products, but such changes (i) shall not include a representation that the Products contain "no preservatives" unless the formulation of the subject Product changes in a manner

warranting such a representation; and (ii) shall not restore any other claim respecting the Products removed from the current labeling unless the formulation of the subject Product changes in a manner warranting such a claim. During the time period between the Label Changes Deadline and the Label Changes End Date, in addition to maintaining the revised Labeling, Defendant shall not advertise the Products inconsistently with (or containing representations removed from) the revised Labeling. Defendant is paying for costs related to the Programmatic Relief.

15. The Court finds that the Settlement is fair when compared to the strength of Plaintiffs' case, Defendant's defenses, the risks involved in further litigation and maintaining class status throughout the litigation, and the amount offered in settlement.

16. The Court finds that the Parties conducted extensive investigation, research, and fact and expert discovery, and that their attorneys were able to reasonably evaluate their respective positions.

17. The Court finds that Class Counsel has extensive experience acting as counsel in complex class action cases and their view on the reasonableness of the settlement was therefore given its due weight.

18. The Court hereby grants final approval to and orders the payment of those amounts to be made to the Settlement Class Members in accordance with the terms of the Settlement Agreement. The Court finds and determines that the Settlement Payments to be paid to each Settlement Class Member as provided for by the Settlement are fair and reasonable.

19. The Court further finds that the Settlement Class's reaction to the settlement weighs in favor of granting Final Approval of the Settlement.

20. The Settlement Agreement is not an admission by Defendant, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendant. Neither this Order,

the Settlement, nor any document referred to herein, nor any action taken to carry out the Settlement, shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or Released Parties.

21. Based upon claims received as of the date of this Order, the parties expect approximately $_____________ of the gross settlement fund to be available for *cy pres* distribution to appropriate charitable organizations identified by the parties and approved by the Court. The Court hereby approves awards of [insert details of *cy pres* awards]. The parties may adjust these awards upwards or downwards as necessary to fully exhaust (but not exceed) the amounts available for distribution after payments of all other settlement expenses, without further Order of the Court.

22. <u>Attorneys' Fees and Costs; Service Awards</u>. Class Counsel have litigated this matter with skill and diligence to confer both a monetary benefit, and an injunctive benefit in the form of cessation of the challenged practice, on the Class Members, and having expended resources and effort to secure a benefit to the Class, with no guarantee of payment due to the contingent nature of the representation, and having turned down other work, are entitled to reasonable attorneys' fees and costs and, accordingly, the Court approves Plaintiffs' Motion for Award of Attorneys' Fees and Costs for $2,900,000, which represents $2,600,000 for attorneys' fees and [amount not to exceed $300,000] for costs.

23. Class Counsel have devoted [X] hours with a lodestar of $[X] to achieve the Settlement in this Action. Having reviewed Class Counsel's Motion for Award of Attorneys' Fees and Costs, the Court finds the requested amount of attorneys' fees ($2,600,000) to be fair, reasonable, and appropriate under applicable law and based upon the following factors: (1) the results obtained are a fair, adequate, and reasonable benefit to the Settlement Class; (2) the fee

award represents one-third or 33% of the $7.8 million common fund which is consistent with fee awards in other similar settlements approved by this Court; (3) the fee award represents a XX% voluntary reduction in Class Counsel's lodestar; (4) [no Settlement Class Member objected to the terms of the Settlement, including the fee award]; (5) the considerable risk that Settlement Class Counsel would recover nothing; and (6) the financial burden taken on by Settlement Class Counsel in litigating the case on a contingent basis.

24. The Court also finds that Class Counsel have incurred $300,000 in litigation cost which were reasonably incurred in the ordinary course of prosecuting this case and were necessary given the complex nature and scope of this case. The Court finds that Class Counsel are entitled to be reimbursed for these costs.

25. In making this award of attorneys' fees and costs, the Court has further considered and found that:

a. The Settlement Agreement created a Settlement Fund of $7,800,000.00 in cash for the benefit of the Settlement Class pursuant to the terms of the Settlement Agreement;

b. Celsius's adoption of the Programmatic Relief was a negotiated, material term of the Settlement Agreement;

c. Settlement Class Members who submitted acceptable proof of claim forms will benefit from the Settlement Agreement because of the efforts of the Class Counsel and the Class Representatives;

d. The fee sought by the Class Counsel is fair and reasonable;

e. Class Counsel have prosecuted the action with skill, perseverance, and diligence, as reflected by the Settlement Fund, and the positive reaction of the Settlement Agreement by the Settlement Class;

f. This Action involved complex factual and legal issues that were extensively researched and developed by the Class Counsel;

g. Class Counsel's rates are fair, reasonable, and consistent with rates accepted within this jurisdiction for complex consumer class action litigation;

h. Had the Settlement not been achieved, a significant risk existed that Plaintiffs and the Class Members may have recovered significantly less or nothing from Defendant;

i. Public policy considerations support the requested fees; and

j. The amount of attorneys' fees awarded and expenses reimbursed are appropriate to the specific circumstances of this action.

26. Celsius and the Released Parties shall not be liable for any additional fees or expenses for Class Counsel or counsel of any Class Representative or Settlement Class Member in connection with the Actions beyond those expressly provided in the Settlement Agreement.

27. The attorneys' fees and costs set forth in this Order shall be paid and distributed in accordance with the terms of the Settlement Agreement.

28. The Class Representatives' dedication and efforts have conferred a significant benefit on millions of consumers across the United States and the general public and accordingly, the Court approves Class Representatives' motion for incentive awards totaling $20,000, to be divided among them.

29. This incentive award is justified by: (1) the risks Class Representatives faced in bringing this lawsuit, financial and otherwise; (2) the amount of time and effort spent on this action by the Class Representatives; and (3) the benefits the Class Representatives helped obtain for the Class Members under the Settlement.

30. The Court finds that the proposed service awards to the Class Representatives are fair, reasonable, and adequate, and orders the following to be paid out of the Settlement Fund: $X for both Amit Hezi and Joseph Nina and $X for Daniel Prescod. The service awards set forth in this Order shall be paid and distributed in accordance with the terms of the Settlement Agreement.

31. Dismissal. The Main Action is hereby DISMISSED WITH PREJUDICE, on the merits, by Plaintiffs and all members of the Settlement Class as against Celsius on the terms and conditions set forth in the Settlement Agreement without costs to any party, except as expressly provided for in the Settlement Agreement.

32. Release. Upon the Effective Date as defined in the Settlement Agreement, the Plaintiffs and each and every one of the Settlement Class Members unconditionally, fully, and finally releases and forever discharges the Released Parties from the Released Claims. In addition, any rights of the Class Representatives afforded under Section 1542 of the California Civil Code and any other similar, comparable, or equivalent laws, are terminated.

33. Injunction Against Released Claims. Each and every Settlement Class Member, and any person actually or purportedly acting on behalf of any Settlement Class Member(s), is hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties.

This permanent bar and injunction is necessary to protect and effectuate the Settlement Agreement, this Final Order of Dismissal, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

34. No Admission of Liability. The Settlement Agreement and any and all negotiations, documents, and discussions associated with it will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing by Defendant, or the truth of any of the claims. Evidence relating to the Agreement will not be discoverable or admissible, directly or indirectly, in any way, whether in this Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Agreement, the Preliminary Approval Order, or this Order.

35. Findings for Purposes of Settlement Only. The findings and rulings in this Order are made for the purposes of settlement only and may not be cited or otherwise used to support the certification of any contested class or subclass in any other action.

36. Effect of Termination or Reversal. If for any reason the Settlement terminates or Final Approval is reversed or vacated, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Defendant or the Class Representatives to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary. In such an event, the certification of the Settlement Classes will be deemed vacated. The certification of the Settlement Classes for settlement purposes will not be considered as a factor in connection with any subsequent class certification issues.

37. Settlement as Defense. In the event that any provision of the Settlement or this Final Order of Dismissal is asserted by Defendant as a defense in whole or in part to any claim, or otherwise asserted (including, without limitation, as a basis for a stay) in any other suit, action, or proceeding brought by a Settlement Class Member or any person actually or purportedly acting on behalf of any Settlement Class Member(s), that suit, action or other proceeding shall be immediately stayed and enjoined until this Court or the court or tribunal in which the claim is pending has determined any issues related to such defense or assertion. Solely for purposes of such suit, action, or other proceeding, to the fullest extent they may effectively do so under applicable law, the Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum. These provisions are necessary to protect the Settlement Agreement, this Order and this Court's authority to effectuate the Settlement and are ordered in aid of this Court's jurisdiction and to protect its judgment.

38. Retention of Jurisdiction. Without affecting the finality of the Judgment and Order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Order and the Settlement.

39. Notice of Completion of Duties. On or before [TBD], Class Counsel shall file a Notice of Completion of Duties, accompanied by declarations from the Settlement Administrator and Class Counsel, which includes the following information:

(1) The total number of claims received;

(2) The total number of verified claims, including a breakdown as to the claims which were not verified for purposes of payout;

(3) Total amount of monies claimed, including a breakdown by claimant;

(4) Total amount of administration costs incurred, including a breakdown of costs incurred for the court to review; and

(5) The amount of money being directed *cy pres*.

40. Upon the Court's receipt of and satisfaction with Class Counsel's Notice of Completion of Duties and accompanying declarations, the Court shall discharge Class Counsel's and the Settlement Administrator's duties and declare this matter closed, unless otherwise ordered by the Court.

41. Nothing in this Order shall preclude any action to enforce the Parties' obligations pursuant to the Settlement Agreement or pursuant to this Order, including the requirement that Defendant make payments to participating Settlement Class Members in accordance with the Settlement.

42. The Parties and the Settlement Administrator will comply with all obligations under the Settlement Agreement until the Settlement is fully and finally administered.

43. The Parties shall bear their own costs and attorneys' fees except as otherwise provided by the Settlement Agreement and this Court.

44. <u>Entry of Judgment</u>. This Order shall constitute a final judgment.

**IT IS SO ORDERED.**

Dated: ________________ ________________________________________

The Honorable Victor Marrero
United States District Judge

# EXHIBIT 5

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-VM**
**Settlement Agreement**
**Proposed Preliminary Approval Order**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMIT HEZI, JOSEPH NINA, and DANIEL PRESCOD individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELSIUS HOLDINGS, INC,<br><br>Defendant. | Case No. 1:21-cv-09892-VM |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

WHEREAS, the above-entitled action is pending before this Court (the "Action");

WHEREAS, Plaintiffs Amit Hezi, Joseph Nina, and Daniel Prescod ("Plaintiffs"), and Defendant Celsius Holdings Inc. ("Defendant" or "Celsius") (collectively, the "Parties") have reached a proposed settlement and compromise of the disputes between them in the above action as set forth in the Class Action Settlement Agreement (the "Settlement Agreement," and the settlement contemplated thereby, the "Settlement");

WHEREAS, the Parties have applied to the Court for preliminary approval of the Settlement;

AND NOW, the Court, having read and considered the Settlement Agreement and accompanying documents, as well as the Motion for Preliminary Approval of Class Action Settlement and supporting papers, and all capitalized terms used herein having the meaning defined in the Settlement, IT IS HEREBY ORDERED AS FOLLOWS:

1. <u>Settlement Terms</u>. The Court, for purposes of this Order, adopts all defined terms as set forth in the Settlement.

2. Jurisdiction. The Court has jurisdiction over the subject matter of the action and over all parties to the action, including all members of the Settlement Class.

3. Preliminary Approval of Proposed Settlement Agreement. Subject to further consideration by the Court at the time of the Final Approval Hearing, the Court preliminarily approves the Settlement as fair, reasonable, and adequate to the Settlement Class, as falling within the range of possible final approval, and as meriting submission to the Settlement Class for its consideration. The Court also finds the Settlement Agreement: (a) is the result of serious, informed, non-collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case and guided in part by the Parties' private mediations with two respected former judges of the Superior Court of Los Angeles County, most recently, the Honorable Judge Peter Lichtman (Ret.) of Signature Resolution, and (b) appears to meet all applicable requirements of law, including Fed. R. Civ. P. 23. Therefore, the Court grants preliminary approval of the Settlement.

4. Class Certification for Settlement Purposes Only. For purposes of the Settlement only, the Court conditionally certifies the Settlement Class, as described below:

> All persons in the United States who, between January 1, 2015 and the date of entry of this Order, purchased in the United States, for personal or household consumption and not for resale or distribution, one of the Class Products.

Excluded from the Settlement Class are: (1) the presiding judges in the Actions; (2) any member of those judges' immediate families; (3) Defendant; (4) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (5) counsel for the Parties; and (6) any persons who timely opt-out of the Settlement Class.

5. The Court preliminarily finds for purposes of considering this Settlement, with respect to the non-injunctive portions of the Settlement Agreement (i.e., all of the Settlement Agreement except the provisions in section 5 thereof), that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the named representatives are typical of the claims of the Settlement Class they seek to represent; (d) the Plaintiffs will fairly and adequately represent the interests of the Settlement Class; (e) the questions of law and fact common to the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

6. The Court preliminarily finds for purposes of considering this Settlement, with respect to the injunctive portions of the Settlement Agreement specified in section 5 thereof, that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the named representatives are typical of the claims of the Settlement Class they seek to represent; (d) the Plaintiffs will fairly and adequately represent the interests of the Settlement Class; (e) the Defendant allegedly has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole if the Settlement Agreement receives final approval.

7. Class Representatives. The Court orders that Amit Hezi, Joseph Nina, and Daniel Prescod are appointed as the Representative Plaintiffs.

8. Class Counsel. The Court also orders that Clarkson Law Firm, P.C. is appointed Class Counsel. The Court preliminarily finds that the Representative Plaintiffs and Class Counsel

fairly and adequately represent and protect the interests of the absent Settlement Class Members in accordance with Fed. R. Civ. P. 23.

9. Class Notice. The Court finds that the Settlement as set forth in the Settlement Agreement falls within the range of reasonableness and warrants providing notice of such Settlement to the members of the Settlement Class and accordingly, the Court, pursuant to Fed. R. Civ. P. 23(c) and (e), preliminarily approves the Settlement upon the terms and conditions set forth in the Settlement Agreement. The Court approves, as to form and content, the notices and claim form substantially in the form attached to the Settlement Agreement.

10. The Court finds that the Parties' plan for providing notice to the Settlement Class (the "Notice Plan") described in the Settlement Agreement constitutes the best notice practicable under the circumstances and constitutes due and sufficient notice to the Settlement Class of the terms of the Settlement Agreement and the Final Approval Hearing and complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. The Court directs that the Settlement Notice Date should occur no later than 21 calendar days from the date of this Order.

11. The Court further finds that the Notice Plan adequately informs members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement. Any member of the Class who desires to be excluded from the Settlement Class, and therefore not bound by the terms of the Settlement Agreement, must submit a timely and valid written Request for Exclusion pursuant to the instructions set forth in the Notice.

12. Settlement Claims Administrator. The Court appoints P&N as the Claims Administrator. P&N shall be required to perform all duties of the Claims Administrator as set forth

in the Settlement Agreement and this Order. The Claims Administrator shall post the Long Form Notice on the Settlement Website.

13. Objection and "Opt-Out" Deadline. Settlement Class Members who wish to object to the Settlement or to exclude themselves from the Settlement must do so by the Objection Deadline and Opt-Out Deadline which is 81 calendar days from the date of this Order. If a Class Member submits both an Opt-Out Form and Objection, the Class Member will be deemed to have opted out of the Settlement, and thus to be ineligible to object. However, any objecting Class Member who has not timely submitted a completed Opt-Out Form will be bound by the terms of the Agreement upon the Court's final approval of the Settlement.

14. Exclusion from the Settlement Class. Class Members who wish to opt out of and be excluded from the Settlement must following the directions in the Class Notice and submit a Request for Exclusion to the Class Administrator, postmarked no later than the Opt-Out Deadline, which is 81 calendar days from the date of this Order. The Request for Exclusion must be personally completed and submitted by the Class Member or his or her attorney. One person may not opt someone else and so-called "class" opt-outs shall not be permitted or recognized. The Class Administrator shall periodically notify Class Counsel and Celsius' counsel of any Requests for Exclusion.

15. All Class Members who submit a timely, valid Request from Exclusion will be excluded from the Class and will not be bound by the terms of the Settlement Agreement, shall not be bound by the release of any claims pursuant to the Settlement Agreement or any judgment, and shall not be entitled to object to the Settlement Agreement or appear at the Final Approval Hearing. All Class Members who do not submit a timely, valid Request for Exclusion will be

bound by the Settlement Agreement and the Judgment, including the release of any claims pursuant to the Settlement Agreement.

16. Objections to the Settlement. Any objection to the Settlement must be in writing, postmarked on or before the Objection Deadline, which is 81 calendar days from the date of this Order, and sent to the Claims Administrator at the addresses set forth in the Class Notice. Any objection regarding or related to the Settlement must contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney if represented, (iii) information sufficient to establish the person's standing as a Settlement Class Member, (iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection, (v) identification of the case name, case number, and court for any prior class action lawsuit in which the objector and the objector's attorney (if applicable) has objected to a propose class action settlement, the general nature of such prior objection(s), and the outcome of said prior objection(s), (vi) the objector's signature, and (vii) the signature of the objector's counsel, if any. Upon Court order, the Parties will have the right to obtain document discovery from and take depositions of any Objecting Class Member on topics relevant to the Objection.

17. Objecting Class Members may appear at the Final Approval Hearing and be heard. If an objecting Class Member chooses to appear at the Final Approval Hearing, a notice of intention to appear must be filed with the Court or postmarked no later than the Objection Deadline.

18. Any Settlement Class Member who does not make a valid written objection as set forth by the Settlement shall be deemed to have waived such objection and forever shall be foreclosed from making any objection to the fairness or adequacy of or from seeking review by

any means, including an appeal, of the following: the Settlement, the Settlement Agreement, the payment of attorneys' fees and costs, service award, or the Final Approval Order and Judgment.

19. Submission of Claims. To receive a Cash Award, the Settlement Class Members must follow the directions in the Notice and file a claim with the Claims Administrator by the Claims Deadlines, which is 81 calendar days from the date of this Order. Settlement Class Members who do not submit a valid claim will not receive a Cash Award and will be bound by the Settlement.

20. Schedule of Events. The following events shall take place as indicated in the chart below:

| **Event** | **Date** |
|---|---|
| Deadline for Settlement Website to go live | 21 calendar days following entry of this Order |
| Deadline to commence Notice Plan ("Settlement Notice Date") | 21 calendar days following entry of this Order |
| Deadline for Claim Forms to be postmarked or submitted online | 60 calendar days after commencement of the Notice Plan |
| Deadline for Objections to be postmarked | 60 calendar days following commencement of the Notice Plan |
| Deadline for Opt-Out Requests to be postmarked | 60 calendar days following commencement of the Notice Plan |
| Deadline for Plaintiffs' application for attorneys' fees and costs and Plaintiffs' incentive awards | 30 calendar days following commencement of the Notice Plan |
| Deadline for Plaintiffs to file motion for final approval of class action settlement | 14 calendar days prior to Final Approval Hearing |
| Deadline for Parties to file all papers in response to any timely and valid Objections | 14 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | 120 calendar days following entry of this Order |

21. On or before twenty-five (25) days prior to the Final Approval Hearing, the Class Administrator shall prepare and deliver a report stating the total number of Settlement Class Members who have submitted timely and valid Requests for Exclusion and Objections, along with the names of such Settlement Class Members, to Class Counsel, who shall file the report with the Court, and Defendant's counsel.

22. Authority to Extend. The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members. The Final Approval Hearing may, from time to time and without further notice to the Settlement Class, be continued by order of the Court.

23. If, for any reason, the Settlement Notice Date does not or cannot commence at the time specified above, the Parties will confer in good faith and recommend a corresponding extension of the Claims Deadline to the Court.

24. Notice to appropriate federal and state officials. Defendant shall, within ten (10) calendar days of the entry of this Order, prepare and provide the notices required by the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), including, but not limited to, the notices to the United States Department of Justice and to the Attorneys General of all states in which Settlement Class Members reside, as specified in 28 U.S.C. § 1715. Class Counsel shall cooperate in the drafting of such notices and shall provide Defendant with any and all information in their possession necessary for the preparation of these notices.

25. Preliminary injunction. Plaintiffs, Settlement Class Members, and any other person, representative, or entity acting on behalf of any Settlement Class Members are, until the Final Approval Hearing, barred and enjoined from (a) filing, commencing, prosecuting, maintaining, or intervening in (as members of a class or otherwise) any claim, lawsuit, arbitration,

administrative, regulatory, or other proceeding arising out of the Released Claims against any of the Released Parties; and (b) organizing or soliciting the participation of any Settlement Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any claim, lawsuit, or other proceeding arising out of the Released Claims against any of the Released Parties. The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over the action and to protect and effectuate the Court's review of the Settlement.

26. Final Approval Hearing. The Court shall conduct a Final Approval Hearing to determine final approval of the Agreement on ________________________________________ at __________ [am/pm] [a date no earlier than 120 days after entry of Preliminary Approval Order]. At the Final Approval Hearing, the Court shall address whether the proposed Settlement should be finally approved as fair, reasonable and adequate, and whether the Final Approval Order and Judgment should be entered; and whether Class Counsel's application for attorneys' fees, costs, expenses and service award should be approved. Consideration of any application for an award of attorneys' fees, costs, expenses and service award shall be separate from consideration of whether or not the proposed Settlement should be approved, and from each other. The Court will not decide the amount of any service award or Class Counsel's attorneys' fees until the Final Approval Hearing. The Final Approval Hearing may be adjourned or continued without further notice to the Class.

27. In the Event of Non-Approval. In the event that the proposed Settlement is not approved by the Court, the Effective Date does not occur, or the Settlement Agreement becomes null and void pursuant to its terms, this Order and all orders entered in connection therewith shall

become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this civil action or in any other case or controversy; in such event the Settlement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement.

28. Stay of Proceedings. With the exception of such proceedings as are necessary to implement, effectuate, and grant final approval to the terms of the Settlement Agreement, all proceedings are stayed in this Action and all Settlement Class Members are enjoined from commencing or continuing any action or proceeding in any court or tribunal asserting any claims encompassed by the Settlement Agreement, unless the Settlement Class Member timely files a valid Request for Exclusion as defined in the Settlement Agreement.

29. No Admission of Liability. By entering this Order, the Court does not make any determination as to the merits of this case. Preliminary approval of the Settlement Agreement is not a finding or admission of liability by Defendant. Furthermore, the Settlement Agreement and any and all negotiations, documents, and discussions associated with it will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or p1inciple of common law or equity, or of any liability or wrongdoing by Defendant, or the truth of any of the claims. Evidence relating to the Settlement Agreement will not be discoverable or used, directly or indirectly, in any way, whether in this Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Agreement, this Order, the Final Approval Order, and the Judgment.

30. Retention of Jurisdiction. The Court retains jurisdiction over this Action to consider all further matters arising out of or connected with the Settlement Agreement and the settlement described therein.

**IT IS SO ORDERED.**

Dated: ________________

______________________________
The Honorable Victor Marrero
United States District Judge

# EXHIBIT 6

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-VM**
**Settlement Agreement**
**Claim Form**

# Submit a Claim

1 **Claimant Information** | 2 Product Selection | 3 Purchase History | 4 Settlement Option | 5 Confirmation

## Claimant Information

In the spaces below, please provide your (i) name, (ii) email address, (iii) phone number, and (iv) address.

First Name*

Middle Initial

Last Name*

Suffix

Email Address*

Contact Phone Number*

Mailing Street Address/P.O. Box (include Apartment/Suite/Floor Number)*

City*

Please check if this is a non-U.S. address ☐

State*

Zip Code*

**Next ▸**

# Submit a Claim

1 Claimant Information

**2 Product Selection**

3 Purchase History

4 Settlement Option

5 Confirmation

## Select the product type(s) that you have purchased between January 1, 2015 and {date of Preliminary Approval}:

**Celsius Canned Beverages**




**Celsius Powdered Beverages**




Not all varieties pictured.

You selected 1 product(s).

Back ◂ Next ▸

# Submit a Claim

1 Claimant Information

2 Product Selection

**3 Purchase History**

4 Settlement Option

5 Confirmation

## Celsius




*Not all Products represented in the above image

**How often do you purchase the class products on average?**

Weekly

**What volume do you typically purchase?**

Single

**How many cans do you reasonably believe you purchased since the start of the class period?**

25

**Are the purchases you are claiming for personal use or resale?**

Personal

☐ *I declare that all of the information on this claim form is true and correct to the best of my knowledge. I understand that my claim form may be subject to audit, verification, and Court review.*

**Certification**

Enter your full name here to certify this claim submission.

☐ I'm not a robot

reCAPTCHA
Privacy - Terms

**Back** ◂ **Submit to Select Settlement Option** ▸

# Submit a Claim

1 Claimant Information | 2 Product Selection | **3 Purchase History** | 4 Settlement Option | 5 Confirmation

## Celsius




*Not all Products represented in the above image

**How often do you purchase the class products on average?**

Weekly

**What volume do you typically purchase?**

Single

**How many cans do you reasonably believe you purchased since the start of the class period?**

25

**Are the purchases you are claiming for personal use or resale?**

Personal

**Please note that the quantity of Class Products claimed requires proof of purchase.** There is no limit to the number of units you may include if you have proof of purchase, but your payment may be limited to a maximum of $250. Proof of purchase may be in the form of receipts, purchase orders, invoices, or other documents indicating the product purchased, date of purchase, and quantity purchased. **Failure to provide sufficient proof of purchase may result in your claim being subjected to a reduction in the total quantity or awarded a reduced value. You will not be contacted by the Class Administrator to supplement your claim if you fail to upload sufficient proof of purchase with the submission of your claim.**

Upload Documentation

Select File for Upload | Browse

☐ *I declare that all of the information on this claim form is true and correct to the best of my knowledge. I understand that my claim form may be subject to audit, verification, and Court review.*

**Certification**

Enter your full name here to certify this claim submission.

☐ I'm not a robot — reCAPTCHA Privacy - Terms

**Back** | **Submit to Select Settlement Option**

# Submit a Claim

1 Claimant Information | 2 Product Selection | 3 Purchase History | **4 Settlement Option** | 5 Confirmation

Settlement Option

After verifying your payment selection, you must click Submit at the bottom of this page to complete your payment selection.

Claim ID
TGM-5487004

Confirmation Number
1162847

**Payment Options**

mastercard

Most widely accepted prepaid card
Use with Apple Pay, Google Pay, Samsung Pay

GET A PREPAID MASTERCARD

PayPal

No bank account required

USE PAYPAL

venmo

No bank account required

USE VENMO

Zelle

Direct to your bank account

USE ZELLE

If you prefer to receive a paper check instead of a faster and more convenient option listed above, click this link.

Submit

# Submit a Claim

1 Claimant Information | 2 Product Selection | 3 Purchase History | 4 Settlement Option | **5 Confirmation**

Your claim was successfully submitted!
Settlement Claim ID: **LLF-1974351**
Claim Confirmation Number: **1254388**

Please print this confirmation page for your records. If you provided a valid email address, you will also receive a confirmation email with this information.

If you need to update your confirmation information in the future, visit www.CelsiusClassActionSettlement.com. You will need both the above Settlement Claim ID and Claim Confirmation Number.

Please be advised that submission of your claim does not guarantee that you are eligible for recovery (monetary or otherwise) from this settlement program. All payments are subject to verification by the court.

Please do NOT contact the Court for questions or issues.

Celsius Class Administrator
P.O. Box 4325
Baton Rouge, LA 70821

**Your Claim Form Must Be Postmarked On or Before 02/13/2023**

***Hezi v. Celsius Holdings, Inc.***

**U.S. District Court for the Southern District of New York, Case No. 1:21-cv-9892-VM**

# Claim Form

**SAVE TIME AND SELECT YOUR PREFERRED PAYMENT METHOD**
**- Submit online at www.CelsiusClassActionSettlement.com**

## GENERAL CLAIM FORM INFORMATION

This Claim Form is for residents of the United States who purchased any Celsius beverage, for personal or household consumption and not for resale or distribution, including the beverages listed below, between January 1, 2015 and November 23, 2022:

**• Original Celsius Beverages (at times labeled "Celsius Live Fit") • Celsius Heat • Celsius BCAA+Energy**
**• Celsius with Stevia • Celsius On-The-Go and Flo Fusion powdered drinks**

You must complete this Claim Form to be eligible for compensation under the Settlement. Class Members who **submit a valid Claim Form by February 13, 2023** are entitled to compensation. Each timely, valid claimant will receive a cash payment based on the amount of Class Products purchased during the Class Period. Submit only one (1) Claim Form per household.

## TO SUBMIT A CLAIM FOR PAYMENT:

1. Complete all sections of this Claim Form.
2. Sign the Claim Form.
3. Provide any Proof of Purchase documentation you may have (see Section 2).
4. Submit the completed Claim Form to the Class Administrator by February 13, 2023

This Claim Form should only be used if a claim is being mailed and is not being filed online. You may go to www.CelsiusClassActionSettlement.com to submit your claim online, or you may submit the Claim Form by mail to the address at the top of this form.

## Section 1: Claimant Information

First Name

Middle Initial

Last Name

Suffix

Email Address

( ) -

Contact Phone Number

Mailing Address: Street Address/ P.O. Box (include Apartment/Suite/Floor Number)

City

State

Zip Code

# Claim Form

## Section 2: Purchase Information Instructions

In the appropriate boxes below, select or enter the relevant information for each Class Product your household has purchased between January 1, 2015 and November 23, 2022.

**Class Members who previously purchased a can of Product during the Class Period may submit a claim to receive $1.00 for each can of Product. Class Members who previously purchased Celsius On-The-Go or Flo Fusion powdered drinks, which typically are sold in packages of 14, may submit a claim to receive $5.00 per package of 14.**

**Class Members who previously purchased a Product but who cannot produce proof of purchase may submit a claim to receive up to $20.00 per household (e.g., 4 powdered beverage packs, 20 canned beverages, or any combination thereof). Class Members who submit approved claims with proof of purchase will be capped at a Cash Award of Two Hundred Fifty Dollars ($250.00) per household. Proof of purchase may be in the form of receipts, purchase orders, invoices, or other documents indicating the product purchased, date of purchase, and quantity purchased. Failure to provide sufficient proof of purchase may result in your claim being subjected to a reduction in the total quantity or awarded a reduced value. You will not be contacted by the Class Administrator to supplement your claim if you fail to provide sufficient proof of purchase with the submission of your claim.**

Proof of purchase, if any, must be submitted concurrently with your claim submission.

| Celsius Canned Beverages | Selections |
|---|---|
| How often do you purchase the class products on average? | ☐ Daily ☐ Weekly ☐ Monthly |
| What volume do you typically purchase? | ☐ Single ☐ 4 Pack ☐ 12 Pack ☐ 24 Pack |
| How many cans do you reasonably believe you purchased since the start of the class period? | ☐☐☐ Quantity of Cans Purchased |
| Are the purchases you are claiming for personal use or resale? | ☐ Personal Use ☐ Resale |

| Celsius Powdered Beverages | Selections |
|---|---|
| How often do you purchase the class products on average? | ☐ Daily ☐ Weekly ☐ Monthly |
| How many packages of powdered sticks do you reasonably believe you purchased since the start of the class period? | ☐☐☐ Quantity of Packages (14 sticks) Purchased |
| Are the purchases you are claiming for personal use or resale? | ☐ Personal Use ☐ Resale |

**Is Proof of Purchase included with your claim submission?** ☐ YES ☐ NO

### Certification

I declare that all of the information on this claim form is true and correct to the best of my knowledge. I understand that my claim form may be subject to audit, verification, and Court review.

**Signature:** ______________________________ **Date:** ☐☐ / ☐☐ / 2 0 ☐☐

## REMINDER CHECKLIST

1. Complete all sections of this Claim Form.
2. Sign and date the Claim Form in Section 2.
3. Enclose any Proof of Purchase documentation you may have.
4. Mail your completed Claim Form to the Settlement Administrator or submit your claim online at www.CelsiusClassActionSettlement.com. Please keep a copy of your completed Claim Form for your records.
5. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form. You can update your contact information at www.CelsiusClassActionSettlement.com

# EXHIBIT 7

***Hezi, et al. v. Celsius Holdings, Inc.***
**Case No. 1:21-cv-09892-VM**
**Settlement Agreement**
**Label Changes**

SPARKLING **LEMON LIME**

# CELSIUS® LIVE FIT

0 SUGAR | GF GLUTEN FREE | KOSHER | NON GMO | CERTIFIED VEGAN VEGAN.ORG

✓ No High Fructose Corn Syrup
✓ No Aspartame
✓ No Artificial Colors

7 ESSENTIAL VITAMINS
**Proven in 6 Published University Studies**

In 2005, vitamin industry entrepreneurs created CELSIUS®

**HOW DOES IT WORK?**

CELSIUS' proprietary MetaPlus® formula, including **green tea with EGCG, ginger and guarana seed**, turns on thermogenesis, a process that boosts your body's metabolic rate.*

Drinking CELSIUS® prior to fitness activities helps energize, accelerate metabolism, burn body fat and calories.*

CELSIUS® **provides ESSENTIAL ENERGY** to LIVE FIT.

- ESSENTIAL ENERGY
- ACCELERATES METABOLISM*
- BURNS BODY FAT*

**Your Ultimate Fitness Partner®**

celsius.com
@celsiusofficial

LEMON LIME

# CELSIUS® LIVE FIT



SPARKLING
LEMON LIME
NATURAL FLAVOR WITH OTHER NATURAL FLAVORS

- ESSENTIAL ENERGY
- ACCELERATES METABOLISM*
- BURNS BODY FAT*

0 SUGAR

12 FL. OZ (355mL)

SPARKLING **LEMON LIME**

# CELSIUS® LIVE FIT

**Contains 0% Juice**

## Nutrition Facts

**Servings Per Container 1**
Serving Size 12 fl. oz (355mL)

**Amount Per Serving**
**Calories 10**

| | % Daily Value* |
|---|---|
| **Total Fat** 0mg | 0% |
| **Sodium** 5mg | 0% |
| **Total Carbohydrate** 0mg | 0% |
| **Protein** 0mg | |
| **Calcium** 50mg | 4% |
| **Vitamin C** 60mg | 70% |
| **Riboflavin** 1.7mg | 130% |
| **Niacin** 20mg | 130% |
| **Vitamin B6** 2mg | 120% |
| **Vitamin B12** 6mcg | 250% |
| **Biotin** 300mcg | 1000% |
| **Pantothenic Acid** 10mg | 200% |
| **Chromium** 50mcg | 140% |

Not a significant source of sat fat, trans fat, cholesterol, dietary fiber, total sugar, added sugars, vitamin D, iron, and potassium.

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

ME-VT-CT-MA-NY IA-HI 5¢ MI-OR 10¢ CA CRV

NOT RECOMMENDED FOR PEOPLE WHO ARE CAFFEINE SENSITIVE, CHILDREN UNDER 18, OR WOMEN PREGNANT OR NURSING.

DO NOT EXCEED (2) SERVINGS PER DAY

**Caffeine Content: 200mg**

Ingredients: Carbonated Filtered Water, Citric Acid, Taurine, Guarana Seed Extract, Green Tea Extract, Caffeine, Ascorbic Acid, Sucralose, Glucuronolactone, Ginger Root Extract, Calcium Pantothenate, Niacinamide, Natural Flavor, Pyridoxine Hydrochloride, Riboflavin, Chromium Chelate, Biotin, Cyanocobalamin.

Celsius, Inc. 2424 N. Federal Hwy., Suite 208, Boca Raton, FL 33431, 866.423.5748

8 89392 00075 7

PLEASE RECYCLE

*CELSIUS® helps maintain the body's regular metabolic function. CELSIUS® alone does not produce weight loss in the absence of a healthy diet and moderate exercise. So, whether you walk the dog or work out at the gym, make CELSIUS® part of your daily regimen.